UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * *
LEAH BASSETT,                              *
          Plaintiff                        *
                                           *
     vs.                                    *              CIVIL ACTION
                                           *              No.
MONICA JENSEN, d/b/a NICA NOELLE;          *
JON BLITT, personally and d/b/a MILE       *
     HIGH MEDIA, d/b/a ICON MALE;          *
     d/b/a TRANSSENSUAL;                    *
MILE HIGH DISTRIBUTION, INC.;              *
JOSHUA SPAFFORD, d/b/a JOSHUA DARLING;     *
APRIL CARTER, d/b/a DIANA DEVOE;           *
TLA ENTERTAINMENT GROUP, d/b/a             *
TLA GAY, d/b/a TLA DISTRIBUTION; and,      *
GAMMA ENTERTAINMENT, d/b/a                  *
CHARGEPAY B.V.                             *
          Defendants[1]                     *
* * * * * * * * * * * * * * * * * * * *
```

PLANTIFF'S VERIFIED COMPLAINT

## I. INTRODUCTORY STATEMENT

This civil action arises from the Mile High-associated Defendants' conduct

variously in leasing and/or trespassing on the Plaintiff's personal residence on Martha's

Vineyard under false pretenses during portions of 2014-15 so that her residence could be

utilized as a housing and shooting locale for a multitude of graphic pornography scenes

for U.S. and international release for the Defendants' commercial gain.  Those

commercial activities were unauthorized by Ms. Bassett; displayed, and continue to

---

[1]   It is evident that each of the above-named Defendants has used multiple personal pseudonyms and/or business names in relation to their commercial activities within the so-called porn industry.  There may be other pertinent d/b/a designations associated with one or more of these Defendants' actionable activities in this matter, and there may be other "actors" to be added as named parties in the course of discovery.

display, numerous background/foreground depictions of her personally-created artwork in violation of federal copyright law; and, were in violation of applicable provisions of her town's zoning ordinance at a minimum.  She seeks both monetary damages and equitable relief upon various legal theories arising severally from state law and federal law claims asserted herein.

II. JURISDICTIONAL STATEMENT

This Court has jurisdiction due both to Ms. Bassett's federal claims arising from asserted violations of the U.S. Copyright Act and the civil-based provisions of the U.S. "RICO" Act respectively, as well as on the basis of diversity of citizenship arising from the out-of-state or out-of-country residential and/or business locations of various Defendants named herein.

III. PARTIES

1.     The Plaintiff, Leah Bassett, is a 43 year old female and professional artist, who was raised on Martha's Vineyard and attended Bates College and the Rhode Island School of Design.  She resides at 7 Skye Lane, Aquinnah, Massachusetts 02535 in a house that she personally designed and built with the assistance of her building contractor father and various of her contractor uncles and friends.

2.     The Defendant, Monica Jensen, reportedly residing on Cape Cod, is an adult female who resided on Martha's Vineyard for a period of months in 2014 and 2015.  Her primary purpose in being on the Vineyard was to create a multitude of gay male and transsexual porn films/videos on behalf of her business partner and/or employer, Jon

Blitt, d/b/a Mile High Media, under her pseudonym identity of Nica Noelle.[2]

3.      The Defendant, Jon Blitt, is an adult male, maintaining a Canadian business address of 8148 Chemin Devonshire, Mont-Royal, Quebec, H4P 2K3.  Upon information and belief, Mr. Blitt is a principal officer and owner of a conglomerate of business entities focused on the "adult entertainment industry", and known generally as Mile High Media (hereinafter "Mile High").

4.      The Defendant, Mile High Distribution, Inc., advertises its business location at the same Mont-Royal, Quebec address stated in Para. 3 supra.  It is listed as the Copyright owner of most, if not all, of the porn films/videos that were shot, wholly or in part, on Ms. Bassett's personal residence under the product line names of Icon Male and Transsensual respectively.

5.      The Defendant, Joshua Spafford, presently domiciled in the Philippine Islands, is an adult male who was hired by Ms. Jensen and Mr. Blitt/Mile High to be their still photographer and occasional videographer per his pseudonym of Joshua Darling for the porn films/videos that they intended to create and shoot in New England in 2014-15.  He also served as their agent in leasing Ms. Bassett's premises under false pretenses.

6.      The Defendant, April Carter, present address unknown, is an adult female who was hired by Ms. Jensen and Mr. Blitt/Mile High to be their production manager per her pseudonym of Diana DeVoe for the porn films/videos that were created and shot in New England in 2014-15.

7.      The Defendant, TLA Entertainment Group, d/b/a TLAgay and d/b/a TLA

---

[2]  A Google search reveals that Ms. Jensen has utilized multiple pseudonym identities over the years during her "professional" career as an exotic dancer/stripper; porn actress; porn writer and director; and, porn blogger/tweeter.

Distribution, is a business entity that advertises, markets, and sells porn films/videos on behalf of various porn suppliers, including evidently Mile High's products.  It has known business locations at 100 South 7th Street, 3rd Floor, Philadelphia, Pennsylvania 19106, as well as at 9 Avenue B, Leetsdale, Pennsylvania 16068.  It marketed and sold to Ms. Bassett a number of the porn films/videos that were created and shot on her personal residence under the product line names of Icon Male and Transsensual respectively.

8.      The Defendant, Gamma Entertainment, d/b/a Chargepay, B.V., is another business entity that advertises, markets, and sells porn films/videos on behalf of various porn suppliers, including evidently Mile High's products.  An Internet search reveals that: *"iconmale.com is a site owned and operated by Gamma Entertainment and its subsidiary Chargepay.B.V.".* Its stated address is Industrieweg 5B, 2421 LK Nieuwkoop, Netherlands.  Similarly, this Defendant also owns the Internet website *"transsensual.com",* and both websites continue to feature various still photos as well as the various films/videos shot on Ms. Bassett's premises.

9.      The Plaintiff anticipates that there will be additional persons or business entities to be named as co-defendants once their identities and respective roles in connection with Mile High's pertinent commercial activities are made known more fully via discovery.[3]

IV.  FACTUAL ALLEGATIONS

10.     In September 2014, Ms. Bassett was contacted by Mr. Spafford in response to an advertisement that she had placed for an extended "Winter" rental of her personal

---

[3]  At present, the Plaintiff is disinclined to sue the estimated 30+ "actors/models" who were present on her residential premises for the commercial pornography purposes on a film by film basis, but she feels differently about Mile High's other Vineyard-based film crewmembers/employees and its other third-party distributors besides TLA Entertainment and Gamma Entertainment.

residence.[4]  That led to several interviews by phone and in person with Mr. Spafford, and

it was mutually agreed that he would rent her fully-furnished personal residence from

October 4, 2014 to May 15, 2015 per the terms set forth in a Lease attached hereto as

Exhibit 1(B).

11.     There was no disclosure made by Mr. Spafford as to the residence's prospective or

intended use as a shooting locale for commercial porn.   He did not identify or introduce

Ms. Bassett to his on-Island employer, Ms. Jensen, nor did he disclose her behind-the-

scene role in inducing him to lease Ms. Bassett's premises for that 7+ month period.

12.     A review of the written Lease clearly reveals that no commercial uses of her

residence, nor any undisclosed occupants other than Mr. Spafford, were permitted.

(See Exhibit 1, pages 5-7, for a summary of the sundry Lease provisions that were

subsequently breached).

13.     After failing to timely tender the monthly rent for March, Mr. Spafford sent an

email, dated March 15, 2015 and attached hereto as Exhibit 1(C), in which he represented

that he had been wrongfully fired by his employer; that he had vacated the leased

premises permanently; and, that he was financially unable to pay any of the remaining

sums due under the Lease.[5]

14.     Following receipt of that unwelcomed email, Ms. Bassett separately asked her

divorced parents, Tod Bassett and Barbara Bassett, each of whom owns and resides in

---

[4]  It was disclosed to Mr. Spafford that Ms. Bassett would be residing abroad during the lease term.

[5]  Notably, that email also made known by way of stated apologies that: (1) He had broken into Ms. Bassett's padlocked bedroom closet for the stated purpose of removing an allegedly malfunctioning smoke detector therein; and, (2) He had left an unspecified number of bags of trash both inside and outside of her residence per his accompanying advice that: *"I think addressing the garbage is pressing."*

houses respectively that her father had built on the same Skye Lane private road, to check on her vacated residence.  They were each shocked by the deplorable state of condition in which they found their daughter's personal residence.  A phonecall was placed in due course to the Aquinnah Police Department, who proceeded to inspect and photograph the unlawful break in to Ms. Bassett's padlocked bedroom closet.[6]

15.     On March 16, 2015, Barbara Bassett walked over to the residence, and found two "strangers" unpacking their suitcases with bags of groceries on the kitchen counter. Demanding to know what they were doing there, she was told that they were guests of Ms. Jensen.  Mrs. Bassett did not know whom they were referring to, but did agree at the strangers' request to speak with Ms. Jensen in lieu of immediately calling the Aquinnah Police.  One of the strangers called Ms. Jensen, and she drove back to Skye Lane and met with Barbara Bassett.

16.     During their face-to-face conversation, Ms. Jensen stated that she was Mr. Spafford's former employer, and that he had unexpectedly ended his employment as a photographer; that she had a prior arrangement with Mr. Spafford whereby she would assume responsibility for the leased premises for the remainder of its term, and had been given the entryway key as proof of that understanding; and, that the two strangers were professional models who would be staying there while she shot advertising-related stock photography.

Ms. Jensen did not utilize her porn pseudonym of Nica Noelle in her introduction to Barbara Bassett, nor did she disclose the true nature of the commercial use(s) for which

---

[6] Upon information and belief, that break in actually occurred **during** one of the porn shoots being directed by Ms. Jensen and produced by Ms. Carter on Ms. Bassett's premises, due apparently to the high-intensity lighting that they were using setting off the smoke detector(s) as a fire hazard.

she had been using Ms. Bassett's residence during the preceding weeks and months.

17.     After confirming that Ms. Jensen had not spoken directly to Ms. Bassett about this "continued" use of the premises in the aftermath of Mrs. Bassett's awareness of the preceding day's email from Mr. Spafford, Barbara Bassett directed that Ms. Jensen remove the two strangers and relinquish the entryway key until she had obtained her daughter's express permission for the claimed sublet continuation.  Ms. Jensen complied with those directives, and had no further contact with Barbara Bassett.

18.     Ms. Jensen and Ms. (Leah) Bassett did subsequently speak by phone, and Ms. Jensen related substantially the same story as part of her bid to formally take over the Lease.[7]  Per Ms. Bassett's direct inquiry, Ms. Jensen assured her that none of the intended "advertising-related photography" would take place on her premises.  Nonetheless, Ms. Bassett decided that Ms. Jensen's stated association with Mr. Spafford was **not** a positive recommendation in view of the condition-related reports that she had received from her parents, and so, she refused to agree to the *de facto* sublet that Mr. Spafford reportedly had entered into with Ms. Jensen and, hence, refused to advise her mother to return the entryway key to Ms. Jensen.

19.     Ms. Bassett then sent an "anticipatory breach"-related demand/settlement letter to Mr. Spafford both by regular mail and email on March 22, 2015, in which she offered, in effect, to conditionally accept $4,000 beyond the deposit sums held in escrow (versus an itemized $5,533 remainder figure that did not include any property damage costs).  That profffered "accord and satisfaction" was  premised in part upon an assessment that Mr.

---

[7]  In addition, Ms. Jensen affirmatively represented that she had personally "pre-paid" $2,333 to Mr. Spafford as the intended March rent and utilities, as well as $1,500 towards the February rent and utilities, and that she had also agreed with him to pay the rent and utilities for the balance of the Lease term.

Spafford would be difficult to "chase down" out of state/country for any full reimbursement of the monies lawfully due under the Lease due to a Facebook post stating that he was moving to the Philippines.

20.     On March 27, 2015,  Ms. Jensen initiated a phone text exchange with Ms. Bassett in which she represented that she and her *"business partner"* (later identified by Mr. Spafford as Mr. Blitt) were willing to pay the $4,000 sum in response to threatening and "extortionist" communications received from Mr. Spafford that purportedly frightened Ms. Jensen to the point that she was literally *"shaking right now"* as she was writing her text.[8]  That proffer was stated as being **contingent upon a written release of all claims** to be signed in advance by Ms. Bassett, which she responded would require some further thought on her part.[9]

21.     On March 28, 2015,  Mr. Spafford emailed Ms. Bassett and stated that **he** would promptly tender the $4,000 proffered settlement sum *"by midweek"*.  His email made no reference to a signed release as a pre-condition, nor to any communications between his former employer(s) and him on that subject.

22.     In actuality, Ms. Bassett has never received **any** monies (other than the pre-paid escrowed deposits per the Lease) since her last rental payment received in February 2015 from anyone associated with the 2014-15 Winter rental/use of her personal residence, -- specifically including Mr. Spafford, Ms. Jensen, and her business partner, Jon Blitt/Mile

---

[8]   Upon information and belief, Ms. Jensen initiated that communication with Ms. Bassett in response to distressed communication(s) that she and/or Mr. Blitt had received from Mr. Spafford about the Aquinnah Police's phone attempt(s) to speak with him about the criminal break in to Ms. Bassett's padlocked bedroom closet (where most of her personal photos, letters, journals, jewelry, etc., had been stored).

[9]   As part of that thought process, Ms. Bassett wished to consult with the undersigned attorney, -- as she had done in advance of sending out her 3/22/15 letter to Mr. Spafford per the "cc." notation stated thereon.

High Media.

23.     Ms. Bassett returned to the Vineyard in May 2015 and discovered that the physical damages to her personal residence were considerably more extensive than her parents had realized and/or reported.  She prepared in due course an up-dated damages letter, dated July 21, 2015 and attached hereto as Exhibit 1(E), that recalculated the unreimbursed amounts due her per the Lease to a base total of $15,609.  That letter, directed solely to Mr. Spafford, did not include any direct reference to, or damages calculation for, Mile High's unauthorized and unlawful use of her personal residence for the production of commercial porn.

24.     As circumstances evolved after Mr. Spafford's departure/breach, Ms. Bassett independently made the highly disturbing discovery that her personal residence had been used during the leasehold for the commercial production of graphic pornography per an array of films/videos "credited" to Nica Noelle, Diana DeVoe, Joshua Darling (in some instances), and Mile High.  When confronted with that new unwelcomed discovery, Mr. Spafford forthrightly both acknowledged and apologized for it, -- although he did not provide many details as to the actual scope and circumstances of that commercial usage until after his receipt of the Chapter 93A Demand Letter, dated October 6, 2015 and attached hereto as Exhibit 1.

25.     Arising from her profound anger, embarrassment, and general sense of personal violation in response to the discovery of her home's use for commercial porn production, Ms. Bassett proceeded over the ensuing weeks/months to engage in periodic, -- and admittedly somewhat obsessive, -- review of Internet sites maintained, *inter alii,* by Ms. Jensen, Ms. Carter, Mr. Spafford, Mile High, and various of the porn actors who publicly

boasted and advertised about their porn shoots on chic and tony Martha's Vineyard. Collectively, they posted numerous photos as publicly-reviewable advertisements, in effect, of the Vineyard-based porn production, which included numerous clothed, nude, semi-nude, and/or graphic sex scene photos or video clips that depicted Ms. Bassett's home, and its distinctive furnishings and artwork, in the background or foreground of those still photos or video clips.[10]

26.     Upon information and belief, the Mile High-associated Defendants (excepting Mr. Spafford after his employment ended in February or March 2015) engaged in the commercial production of porn in other property owners' homes on the Vineyard and elsewhere in New England during 2014-15.  In that regard, Ms. Bassett came across a Twitter post that Ms. Jensen published on July 15, 2015 under another one of her aliases, -- *viz.,* Little Miss Sunshine @ Nica Theory, -- in which she gushed:  *"Its great to work in a state where shooting porn is completely legal & our location owners don't have to keep us a secret. #New Hampshire".*  (A copy of that Tweet is attached hereto as Exhibit

---

[10]  As difficult as it was for Ms. Bassett to view pornography of any kind shot within her own home, she persisted in doing so in relative "secrecy" in attempting to put the pieces together as to what had occurred on her premises during the 5+ months of porn activity.  It became clear to Ms. Bassett, both from her Internet review and her ensuing review of a sampling of the DVDs that she purchased from TLA Entertainment, that the Mile High-associated Defendants utilized nearly every room of her home for their porn production purposes, including nude, semi-nude, and/or male ejaculatory scenes in her bedrooms, her livingroom and family room sofas, her stairway, atop her dining room table, her bathrooms, her basement, atop her laundryroom appliances, etc..  It also became clear that they deliberately moved some of her more distinctive pieces of art from room to room in order to "aesthetically enhance" their porn scenes of oral and anal sodomy.  Similarly, it became clear that they had deliberately used her linens and bedspreads, including the decorative bedroom pillows hand-sewn/designed personally by Ms. Bassett, for their condom-less ejaculatory porn scenes, rather than purchasing and using more generic linens, etc., of their own.  Related thereto, two copier photos by way of illustration of the pile(s) of unwashed, semen-stained, and/or fecal-stained linens and clothes, etc., that her parents found, and left, in the home following Ms. Bassett's receipt of Mr. Spafford's 3/15/15 email are attached hereto as Exhibit 2.

5(A)).[11]

In the case of Ms. Bassett, at least, as one of the so-called *"location owners"*, the Mile High-associated Defendants wilfully kept their illegal *"shooting porn"* activities in Massachusetts, versus New Hampshire, *"a secret"* from her as well!  That conduct was not only in violation of the terms of the Lease, prohibiting the use of her premises for **any** commercial purposes, but also in violation of Aquinnah's zoning by-laws that would have required Mile High to successfully secure per a noticed public hearing a Special Permit in order to conduct commercial activities of a temporary, but repeated, nature on premises, such as Ms. Bassett's, located in a strictly "Residential District".

27.     Ms. Bassett engaged the services of a mental health therapist for the first time in her adult life in or about September 2015 in an effort to help her cope with the emotionally and psychologically traumatizing effects of the Defendants' conduct, and found it necessary to continue that mental health counseling for more than a year.  She has found it difficult to reside comfortably in her own home, leaving it vacant for much of the ensuing 2+ years. And while she has had financial need for the rental income that she could have been earning during her periodic absences, she has been emotionally unable to rent out her personal residence long-term to strangers again, no matter how well vetted seemingly.

---

[11]  Upon information and belief, the enactment in 2012 of a law titled *"County of Los Angeles Safer Sex In the Adult Film Industry Act"* (also known as *"Measure B"*), which requires the use of condoms in all commercially-produced porn scenes of vaginal or anal sex as a condition of receiving both a filming permit and a required public health permit, was a driving factor in the Jensen/Blitt/Mile High decision to "relocate" their porn production activities outside of California.  Per a BBC News article, dated December 16, 2014 and headlined *"U.S. Court upholds Los Angeles condom law for porn actors"*, it was noted that: *"Critics of the law say that since the ban came into effect, the number of adult films made in Los Angeles has fallen from nearly 500 in 2012 to just 40 a year later.  They say some studios have moved production to other states such as Nevada or Florida."*

28.     As referenced in numerated paragraph 24 supra, a Demand Letter per Section 9 of the Massachusetts Consumer Protection Act, Mass. General Laws, Chapter 93A, was transmitted to the following named addressees on or about October 6, 2015:  (1.) Joshua Spafford, a/k/a Joshua Darling; (2.) Monica Jensen, a/k/a Nica Noelle; and, (3.) Jon Blitt, d/b/a Mile High Media/Distribution.  A copy of that Demand Letter is attached hereto as Exhibit 1, and its contents incorporated herein by reference.

29.     Mr. Spafford responded in a timely manner via email.  He offered his on-going cooperation re the numerated Informational Requests set forth in the Demand Letter, while alleging that he had no appreciable assets or income with which to tender any monetary compensation to Ms. Bassett.

30.     A response letter, dated November 17, 2015 and attached hereto as Exhibit 3, was received from counsel representing jointly Ms. Jensen, Mr. Blitt, and the business entities referred to collectively therein as *"Mile High"*.

31.     In short, Co-Defendants Jensen and Blitt/Mile High denied engaging in **any** actions that were in violation of Aquinnah's zoning ordinance or any other state law; that were unfair or deceptive within the scope of the Massachusetts Consumer Protection Act; or, that were otherwise actionable on any grounds by Ms. Bassett against them.  They declined to accede to **any** of Ms. Bassett's monetary and/or non-monetary demands for relief, or to propose **any** monetary sum as a counteroffer.

32.     As to the non-monetary demands, Ms. Bassett's 93A Letter included thirteen numerated Informational Requests that she demanded written responses to *"within the next 30-35 days"* in the absence of a negotiated settlement agreement within that timeframe.  By way of illustration, the first five of those thirteen queries were as follows:

"(i)  The legal name; any porn industry pseudonym; age; social security number; last known physical address; email contact information; and, wages and/or other forms of monetary compensation paid while on the Vineyard in 2014-15 for each actor or other film crew member who was physically present at any time on Ms. Bassett's premises;

(ii)  The calendar dates on which any porn-related activities, including without limitation script-writing, staging, food catering, filming, clean up, etc., took place on Ms. Bassett's premises;

(iii)  A copy of all employment contracts and compensation-related records for each actor or other film crew member who was physically present at any time on Ms. Bassett's premises;

(iv)  A copy of all permit applications or other documents filed with the Town of Aquinnah or any other municipality or state agency within Massachusetts in relation to engaging in porn-related or other entertainment-related commercial activities on Ms. Bassett's premises or elsewhere within MA during 2014 and 2015;

(v)  A list by title of all films/videos shot in toto, or in part, on Ms. Bassett's premises, including both a written summation of all film "credits" listed thereon in terms of writer, director, producer, actors, etc., as well as an actual copy of each such film/video;".

33.     Co-Defendants Jensen and Blitt/Mile High wilfully failed to respond to those

thirteen queries, or to otherwise provide **any** of the demanded information either in their

formal Response Letter per Section 9 or in any ensuing communication between the

parties' respective counsel.[12]

34.     As a partial response to said Co-Defendants' "unresponsive" 11/17/15 Response

Letter, Ms. Bassett sent out a separate 93A Demand Letter, dated November 28, 2015, to

the business entity with which she had placed a purchase order on or about October 16,

---

[12]  Copies of the ensuing exchange of letters between counsel, dated November 27, 2015, January 4, 2016, January 21, 2016, February 1, 2016, and February 9, 2016 respectively, are attached hereto as a packet as Exhibit 4.  A quite notable feature of each of the letters sent on behalf of Co-Defendants Jensen and Blitt/Mile High is the stated, and certainly frivolous, threat(s) in each one to initiate legal action(s) against Ms. Bassett and/or against her undersigned counsel on conclusory-stated grounds.  Those letters contain no hint of any acknowledgement, or any remorse, for the unauthorized commercial uses, physical damages to her premises, and/or the unauthorized display of her copyrighted artwork, committed against Ms. Bassett. They simply impugned and threatened her.

2015 for a sample-size of seventeen of the 30+ Icon Male and Transsensual porn videos being marketed at that time for the intended purpose of gauging how readily identifiable her premises and personal furnishings and artwork were in those commercially-marketed films. A copy of that Demand Letter is attached hereto as Exhibit 5 and its contents incorporated herein by reference.

35.     In summary, Ms. Bassett demanded that TLA Entertainment Group, d/b/a TLAgay: (1.) Cease marketing and distributing those Mile High product line videos until it had secured proof that Mile High had secured a Special Permit from the Town of Aquinnah for its commercial activities in a zoned Residential District, *"as well as a written rental agreement/location fee from Ms. Bassett for the use of her premises for that commercial purpose (coupled with a signed artwork release for each of her copyrighted works of art depicted in those videos and/or stills)"*; (2.) Comply with specified informational demands related to its sales of those Mile High product line videos; (3.) Reimburse Ms. Bassett for the video charges on her credit card purchase order (with an invoice copy attached thereto); and, (4.) Provide *"a complete set of all videos that have been marketed and distributed by your company under the Icon Male and Transsensual lines during that 14 month timeframe in order to assist us in determining how many other videos also feature scenes or stills filmed on Ms. Bassett's premises without legal authority."*

That letter noted in its concluding paragraph that no further legal action would be taken against TLA Entertainment Group if it promptly and satisfactorily complied with Ms. Bassett's above-stated demands.

36.     That Defendant wilfully elected to make no reply to the 11/28/15 Demand Letter,

although its receipt and apparent communications thereto with Mile High is established

via a specious and threatening "Cease and Desist" letter, dated January 4, 2016 and

attached as Exhibit 4(B), sent by Co-Defendant Blitt/Mile High's counsel (referencing

TLA Entertainment and TLAgay as *"customers"* of Mile High Media).

37.    Prior to receipt of that 1/04/16 letter, a titled *"Second 93A Demand Letter on

behalf of Leah Bassett",* dated January 6, 2016, was transmitted by certified mail to TLA

Distribution per the return address on three of the Transsensual line videos that had been

mailed out in December 2015 per Ms. Bassett's 10/16/15 purchase order.  A copy of that

Second Demand Letter is attached hereto as Exhibit 6 and its contents incorporated herein

by reference.

38.    Despite a signed USPS "return receipt" of that Second Demand Letter, Defendant

TLA Entertainment Group, d/b/a TLA Distribution, again wilfully elected to make no

response as demanded therein in compliance with Section 9 of the Massachusetts

Consumer Protection Act.

39.    A photocopy of a pertinent portion of the glossy 56-page brochure that

accompanied the initial shipment of porn videos from Defendant TLA Entertainment

Group is attached hereto as Exhibit 7.  In extolling Mile High's Icon Male line, that

brochure's promotional blurb reads:

   *By bringing back detailed -- and oftentimes controversial -- plot back to porn, this
brand-new line has taken the industry by storm. Director Nica Noelle brings a strong
vision in the hardcore features on these two pages that showcase scorching sex as well as
industry heavyweights such as Connor Maguire, Trenton Ducati, Nick Capra, Tommy
Defendi and -- yes! -- the on-screen return of Brent Corrigan! Retailing for $49.99...*[13]

---

[13]  In the Plaintiff's view, that descriptive phrase of *"detailed -- and oftentimes controversial -- plot back to
porn"* is overly kind with respect to much of the material created on Ms. Bassett's premises and/or marketed
by the Defendants.  As suggested by many of the Icon Male film titles, such as *"Brothers"; "Daddy's Big

cont. →

40.     The two still photos depicted on those pages for "*Schoolboy Fantasies 2*" and

'*His Son's Best Friend Volume 1*" respectively were clearly shot on Ms. Bassett's premises

per the furnishings in the background, and upon information and belief a majority of the

24 films/videos advertised for sale on those two pages were shot, wholly or in part, on

Ms. Bassett's premises.[14]

41.     Upon information and belief, Ms. Jensen was contacted by a reporter/editor from

the <u>Martha's Vineyard Times</u> on or about February 15, 2015 to confirm a telephone report

that the <u>Times</u> had received that she was "secretly shooting porn", or words to that effect,

on the Vineyard.[15]   She reportedly denied being engaged in any porn filming or related

porn activity.

42.     Upon information and belief, both Ms. Jensen and Ms. Carter repeatedly

---

Boy"; "*Fathers & Sons*"; "*Forbidden Encounters*"; "*Forgive Me Father*"; "*Forgive Me Father 2*"; "*His Daughter's Boyfriend*"; "*His Son's Best Friend*"; "*Schoolboy Fantasies*"; "*The Stepfather*"; "*Straight Boy Seductions*", many of the films shamelessly depict story lines centered on clergy sexual abuse, teacher/student liaisons, and other "fantasies" of sexual predation, including depicted acts of incest, pedophilia, and rape.

[14]   Per the Plaintiff's review of Ms. Jensen's Twitter posts under her several "handles", she relocated to Cape Cod circa June 2015; boasted about obtaining her MA driver's license; and, has continued to create/shoot porn films for Mile High (whether in MA, NH, or elsewhere).  A review of the websites for Icon Male and Transsensual reveals that they are now marketing some 84 and 34 films respectively, - including all of the ones known or suspected of being shot on Ms. Bassett's premises, - and so Ms. Jensen/Blitt/Mile High have evidently remained very active since Ms. Jensen relocated from Martha's Vineyard to Cape Cod.
     In terms of the porn films' suspected profitability, the named defendants in an analogous, but much smaller scale, lawsuit initiated in CA in late-2015 (*i.e.,* <u>Knapic v. Lucas Entertainment et als</u>) averred in an affidavit that was filed in opposition to a Motion for Preliminary Injunction that the anticipated earnings over a five year span for the two gay porn films shot on that plaintiff's premises over a six day period would be $200,000 per film. Upon information and belief, Mile High is a much larger and much more financially successful adult entertainment company than that other defendants' "one man" production company.

[15]   Upon further information and belief, the caller was one of the porn actors, Billy Santoro, who had been contracted by Ms. Jensen and Mile High to come to the Vineyard for hire for the purpose of participating in one or more of their porn films.  Mr. Santoro had reportedly become disgruntled with his employer(s) at the time of his attempted "whistleblower" call to the <u>Times</u>.

emphasized in their written and verbal communications with Mr. Spafford and the

numerous porn actors/models that they hired to come to the Vineyard for Mile High's

commercial porn production, as to the temporary need for secrecy as to the true purpose

of their presence on the Vineyard, -- both prior to and after Ms. Jensen's verbal exchange

with the Vineyard Times reporter/editor.

43.     Upon information and belief, the following quote is a true and accurate

representation of a portion of one of the so-called Call Sheet(s) that Mile High's agents

transmitted to Mr. Spafford and to some or all of the actors/models in connection with

one or more planned films being shot on the Vineyard:

> WE HAVE TWO MODEL SHOOT HOUSES WITH MULTIPLE BEDROOMS.
> WE ALSO BOOK ADDITIONAL ROOMS, AS NEEDED. YOU (*sic*) ROOM AND
> BOARD WILL BE FULLY PROVIDED. PLEASE DO NOT DISCLOSE THE
> SPECIFIC LOCATION OF OUR PRODUCTION ON SOCIAL MEDIA/TWITTER.
> You can post/tweet selfies and other pics and feel free to say you're working for us,
> but don't be specific about where you are. "New England" or "east coast" is perfect.
> (Capitalized emphasis in original)

Upon information and belief, Ms. Bassett's personal residence was one of the

aforereferenced *"TWO MODEL SHOOT HOUSES WITH MULTIPLE BEDROOMS"*.

44.     Per post-Demand Letter written accounts supplied by Mr. Spafford, the "usual"

location owner fee paid within the porn industry generally, and including his prior

experience upon information and belief in working for Ms. Jensen and/or Mr. Blitt/Mile

High circa 2013-14 on filming locations in California, Florida, and/or New Hampshire

respectively was $1,000 per day, -- which he states did not typically include "housing" the

actors/models on site.  Thus, one of the Mile High-associated Defendants' goals evidently

in leasing the *"model shoot houses"* on the Vineyard for an extended number of months in

order to shoot **a high volume** of commercial porn films/videos without disclosure to the

"location owners" was to substantially reduce their "usual" production costs per that particular line item.[16]

## V.  LEGAL THEORIES OF RECOVERY

### Count One  (Breach of Contract)

45.     The Plaintiff asserts that Defendant Spafford engaged in multiple acts, whether by commission or omission, in his capacity as the signed lessee of Ms. Bassett's personal residence that breached the written terms of the Lease.

46.     The Plaintiff further asserts that most, if not all, of those contractual breaches of the Lease were committed at the behest, and/or for the intended commercial benefit, of the other Mile High-associated Defendants, for which they are severally or jointly liable.

47.     The Plaintiff further asserts that Defendant TLA Entertainment separately breached  an implied covenant of good faith in its dealings with Ms. Bassett as a paying "customer".

### Count Two  (Trespass)

48.     The Plaintiff asserts that Defendant Spafford engaged in one or more acts of actionable trespass during his period of occupation of Ms. Bassett's personal residence,

---

[16] Recalling per Para.s 32-33 supra that the Jensen/Blitt/Mile High Defendants wilfully refused to respond to Ms. Bassett's informational demands as to *"(t)he calendar dates on which any porn-related activities... took place on Ms. Bassett's premises;"* as well as the identity of *"each actor or other film crew member who was physically present at any time on Ms. Bassett's premises;"* the Plaintiff contends that she is entitled to an evidentiary finding, either by way of default or estoppel, that those Defendants' intent from the outset was to use her personal residence as a shooting locale for porn, as well as a rotating housing facility for the film crew members and actors/models, for the entire leasehold term.  If Mr. Spafford's "insider" information proves to be credible/accurate that the usual location fee was $1,000 per day, augmented by his estimated $500 per day additur for the housing facility usage, a *quantum meruit* calculation for the "location owner fee" amounts alone that are owed to Ms. Bassett comes to $305,000 (based on the leaseterm of 224 days at $1,000 per, plus 162 of those days used for housing crew members and actors/models at an additional $500 per).  Ms. Bassett contends that sum should be trebled per her 93A Count, or alternatively per her RICO Count.

including notably the unauthorized and forcible entry into her padlocked bedroom closet.

49.     The Plaintiff further asserts that none of the persons engaged in the commercial porn activities on Ms. Bassett's premises were authorized to be there by her verbally, or per the terms of the Lease and/or per Aquinnah's zoning ordinance, constituting actionable trespass.

50.     The Plaintiff further asserts that most, if not all, of those act(s) of trespass were done at the behest, and/or for the intended commercial benefit, of the other Mile High-associated Defendants, for which they are severally or jointly liable.

### Count Three (Negligence)

51.     The Plaintiff asserts that some of the physical damages done to Ms. Bassett's personal residence and furnishings therein were committed by the negligent actions of one or more of the persons present on her premises while in the employ of the Mile High-associated Defendants, -- for which those Defendants are liable on a *respondeat superior* basis.

### Count Four  (Violation of Chapter 93A)

52.     The Plaintiff asserts that each of the Defendants named as addressees of the Demand Letters attached hereto as Exhibits 1, 5, and 6 respectively, as well as Defendant Gamma Entertainment, engaged in various actions directed against Ms. Bassett's personal, property, and/or commercial interests/rights that constituted *"unfair or deceptive acts or practices in the conduct of any trade or practice"* in contravention of the Massachusetts Consumer Protection Act, Mass. Gen. Laws, Chapter 93A (and continue to do so in the case of those Defendants that continue to market, post on-line, and sell the films/videos and advertising stills at issue).

53.     The Plaintiff further asserts that each of those Defendants engaged in various

*"unfair or deceptive acts or practices"* in a manner respectively that would be construed

as *"wilful"* as interpreted per that Act.

### Count Five  (Civil Conspiracy)

54.     The Plaintiff asserts that the Defendants, individually or jointly by and among

themselves or in conjunction with other persons to be identified in discovery, have

engaged in conduct as broadly described herein that constitutes actionable conspiracy to

the detriment of Ms. Bassett's personal, property, and/or pecuniary interests/rights.

### Count Six  (Civil Fraud)

55.     The Plaintiff asserts that one or more of the Mile High-associated Defendants

have engaged in conduct as broadly described herein that constitutes actionable fraud to

the detriment of Ms. Bassett's personal, property, and/or pecuniary interests/rights.

### Count Seven  (Infliction of Emotional and Mental Distress)

56.     The Plaintiff asserts that the Defendants, individually or jointly, have engaged in

conduct as broadly described herein that tortiously and actionably, whether by negligent

or intentional conduct, has proximately resulted in the infliction of severe emotional and

mental distress to Ms. Bassett.

### Count Eight  (Interference with Advantageous Business Relations)

57.     The Plaintiff asserts that the Defendants, individually or jointly, have engaged in

conduct as broadly described herein that constitutes an actionable interference with

advantageous business relations with regard to Ms. Bassett's present and/or prospective

use of her personal residence for periodic rental purposes.

Count Nine  (Copyright Infringement)

58.    The Plaintiff asserts that the Defendants, individually or jointly, have engaged in

various conduct in violation of the United States Copyright Act, U.S. Code, Title 17,

arising from the creation, marketing, and sales for their, and perhaps others', commercial

gain of the porn films/videos and still photography shot on Ms. Bassett's premises that

depict her copyright-protected works of art without her permission.

59.    The Plaintiff further asserts that many, if not most, of her personally-created

artistic works depicted in those porn films/videos and still photography have been

"registered" by her in the U.S. Copyright Office, entitling her in the alternative at her

election either to the several Defendants' profits or to so-called "statutory damages" for

their continuing display of her artwork for commercial purposes/profit without her

permission.[17]

---

[17] A review of the letters sent on Ms. Bassett's behalf to the Mile High-related Defendants and the TLA
Entertainment Defendant(s), attached hereto as Exhibits 1, 4, 5, & 6 respectively, reveal that she **repeatedly**
complained about the unauthorized use/display of her copyrighted artwork, and demanded, *inter alii,* and
without avail that they digitally "blur" all of the artwork in her premises depicted in those porn films/videos
and still photography at a minimum.  Evidently, the Defendants believed that doing so would detract from
their product's commercial appeal and monetary value.
     To partially illustrate the scope of the infringements at issue, Ms. Bassett has secured U.S. Copyright
Registration Certificates extending to 53 of her original artistic creations throughout her personal residence,
encompassing mostly "wall-hanging" artwork, but extending as well to hand-made pottery on decorative
display, hand-sewn fabric pieces, her uniquely-designed fireplace facade, etc..  She has not yet ascertained
whether **all** 53 of those individually visible pieces of artwork appear in the infringing films/videos and
advertising stills, and largely due to the twofold reasons that the Mile High-associated Defendants and the
TLA Entertainment-associated Defendants have wilfully refused to date to identify and produce the total
number of videos and stills shot on her premises, coupled with the on-going fact that it remains very painful
and upsetting emotionally for Ms. Bassett to watch closely or repeatedly the videos and stills that she has
seen per the ones purchased from TLA Entertainment or per her Internet searches.  It is vividly clear from
her first-person reviews to date, however, that a great many of those 53 registered pieces of artwork do
appear repeatedly, and in some instances very prominently, in the Mile High-created commercial porn
products.  An illustrative sample of ten infringing screenshots/stills are attached hereto as Exhibit 8.
     The Plaintiff  further notes that there are other original works of art that she acquired by gift or by
purchase from other artists that are also depicted without her/their permission in some of the porn
films/videos and still photography, but she does not own the copyright rights to them and has not yet
attempted to contact those artists as prospective third-party plaintiffs.

60.     The Plaintiff further asserts that the Mile High-associated Defendants knew from the outset that Ms. Bassett was a professional artist, and related thereto, had reason to know that many, if not most, of the "original" pieces of artwork in her personal residence were protected by applicable copyright law from unauthorized depictions for commercial purposes.  Consequently, the Plaintiff contends that her remedies for damages per Title 17, Section 504 (*Remedies for infringement: Damages and profits"*) extends beyond her election to recover *"any profits of the infringer that are attributable to the infringement"* per Section 504(b) to her entitlement to statutory damages per Section 504(c)(1), stating in pertinent part: *"In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000"* per infringement.  In the case at bar, there are numerous, if not hundreds or even thousands, of separate instances of copyright infringement at issue.[18]

61.     The Plaintiff further asserts that the Mile High-associated Defendants in possession and control over the films/videos and advertising stills shot on Ms. Bassett's premises were plainly made aware in the 93A Demand Letter that she was upset by the unauthorized depictions of her copyrighted artwork, and she demanded that they immediately cease displaying and/or selling those films/videos and advertising stills. That demand, repeated throughout the entire course of her counsel's written

---

[18] As a leading precedent to this type of infringement, see <u>Ringgold v. Black Entertainment Television, Inc.,</u> 126 F.3d 70 (2nd Cir. 1997).  Quoting from one of the Westlaw headnotes: *"Use of poster depicting 'story quilt' created by artist as set decoration on television program which resulted in depiction of poster, in less than perfect focus, in one four-to-five second segment and several smaller segments for total of 26 to 27 seconds, was not de minimis, so use was actionable as copyright infringement. 17 U.S.C.A. s.118(b); 37 C.F.R. s.253.8."*

communications attached hereto in Exhibits 1, 4, 5, and 6, went unheeded, -- resulting in on-going copyright infringement violations by the Mile High, TLA Entertainment, and Gamma Entertainment Co-defendants in their collective efforts to increase their profits from those porn films and stills unlawfully shot on Ms. Bassett's personal residence.

Count Ten  (Civil Violation of the RICO Act)

62.     The Plaintiff asserts that the Defendants, individually or jointly, have engaged in various conduct in violation of the Racketeer Influenced and Corrupt Organizations Act, U.S. Code, Title 18, arising from the creation, marketing, and sales for their, and perhaps others', commercial gain of the porn films and still photography shot unlawfully on Ms. Bassett's premises, as well as other porn films and still photography shot unlawfully for commercial gain upon other property locations within Massachusetts and/or other States upon information and belief.

In the course of those commercial porn-related activities, the Plaintiff has reason to believe that multiple laws have been broken at the municipal, state, and/or federal level as part of a pattern of commercially-motivated dishonesty, rascality, and criminality.

## VI. JURY CLAIM

The Plaintiff respectfully demands a trial by jury as to all numerated Counts herein so triable.

## VII. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court establish liability as to each of the Defendants, severally and jointly, in relation to each of the numerated Counts as applicable, and award to Ms. Bassett compensatory damages, including statutory/punitive damages as applicable, as well as her costs and attorney's

fees, and enter such temporary and permanent injunctive orders upon the Plaintiff's

motion(s) thereto, as it deems meet and just.

LEAH BASSETT

By her attorney,

_John C. Taylor_

John A. Taylor, Esquire
MA BBO# 493400
18 Central Square
Bristol, NH  03222
(603) 530-2160
jataylor317@gmail.com

Date: March 23, 2018

## VERIFICATION

The undersigned Leah Bassett hereby attests under the pains and penalties of perjury that all factual representations made in this Plaintiff's Verified Complaint, exclusive of its attached Exhibits, that fall within my stated personal knowledge and present recollection are true and recounted in good faith.

Date:  3/21/2018

_Leah Bassett_

Leah Bassett