# Plaintiff's Complaint Exhibit 4

Letters between Counsel, dated 11/27/2015
dated 01/04/2016
dated 01/21/2016
dated 02/01/2016
dated 02/09/2016

17 pages

**JOHN ANTHONY TAYLOR, ESQUIRE**
**TAYLOR LEGAL COUNSEL**
*(Practicing Exclusively in Massachusetts)*
18 CENTRAL SQUARE
BRISTOL, NEW HAMPSHIRE  03222
(603) 744-8000
(603) 744-8585 (Fax)

ANTHONY TAYLOR (1749-1826)
AMOS TAYLOR (1784-1866)
MOSES L. TAYLOR (1810-1892)
FRANKLIN L. TAYLOR (1844-1929)
AMOS L. TAYLOR (1877-1965)
A. LEAVITT TAYLOR (1912-1991)

OF COUNSEL
ADAMS & BLINN, P.C.
43 THORNDIKE STREET
CAMBRIDGE, MA 02141
(617) 577-9700
(617) 494-9068 (Fax)

November 27, 2015

Natalie R. Megaloudis, Esq.
Roach, Ioannides & Megaloudis, LLC
50 Congress Street, Suite 400
Boston, MA  02109-4061

Re: <u>Claims of unfair or deceptive acts or practices arising from unauthorized commercial and offensive use of Leah Bassett's residential premises</u>

Dear Atty. Megaloudis:

I acknowledge receipt of your letter of Nov. 17, 2015 re your representation of Monica Jensen and those persons or entities operating under the name of "Mile High" in response to Leah Bassett's 93A demand letter, dated Oct. 6, 2015.

As a point of information, Mr. Spafford chose to respond to that letter directly rather than through counsel, and I will say that he appears to have been **far more forthcoming** than your clients. He has provided a detailed narrative account of both his actions in renting Ms. Bassett's premises, as well as his interactions with Ms. Jensen, Mr. Blitt, and others in relation to its use as a filming location for the unauthorized and unlawful porn production, and as a rotating hotel for the porn performers and crewmembers. Mr. Spafford also voluntarily provided scores of pages of text messages and/or email exchanges between him and Ms. Jensen and Mr. Blitt respectively that reference both the commercial porn production on Martha's Vineyard in 2014-15 and the use of Ms. Bassett's premises therefor. Frankly, I doubt that you would have been as dismissive of Ms. Bassett's claims if your clients had provided you with those same communication exchanges.

Perhaps most refreshingly, there has not only been a welcomed level of candor and cooperation from Mr. Spafford in his series of emails and forwarded documents since his initial response more than a month ago, but a seemingly genuine level of acknowledgement and contrition for his role in violating Ms. Bassett's personal and property rights in this matter. By contrast, your clients' response letter was utterly devoid of any such candor or contrition.

Without seeing any need or value in parsing your clients' response letter in complete detail, there were several statements therein that struck me as meriting a response at this pre-litigation stage. First, I am nonplussed by your claim that *"at no time did Ms. Jensen or Mile High ever have any agency, employment or other legal relationship with Mr. Spafford relative to renting Ms. Bassett's Property...".* Having ordered and reviewed fourteen porn videos thus far that were filmed wholly or in part on Ms. Bassett's personal residence, it is very clear that every one of them state that the sole copyrighted owner of those commercial properties is Mile High Distribution, Inc., while the credited writer and director of every one is stated as Nica Noelle (while most, if not all, of them credit Joshua Darling as the films' photographer and/or videographer). There might be some plausibility to your claim if Mr. Spafford had created and staged those commercial films and stills all on his own, and **subsequently** sold the proprietary rights to them to your clients, but that appears very clearly to be not the case.[1]

Second, I am similarly nonplussed by your claim that *"at all times my clients were lawfully on the Property with Mr. Spafford's express consent and permission."* Without disputing that Mr. Spafford permitted the commercial porn production to take place on Ms. Bassett's premises (at least until he vacated them), he had no "lawful" authority to do so, -- either as a unilateral waiver of the pertinent Lease provisions or as a waiver of Aquinnah's pertinent zoning ordinances relative to commercial activities within a district designated as exclusively Residential. Related thereto, I enclose a copy of a tweet that Ms. Jensen, a/k/a Nica Theory, posted on social media on July 15, 2015 in which she wrote: *"It's great to work in a state where shooting porn is completely legal & our location owners don't have to keep us a secret. #New Hampshire".* Unfortunately for your clients, Ms. Bassett's personal residence is **not** located in my own domiciliary state of New Hampshire, compounded by the fact that your clients (and Mr. Spafford) wilfully decided to keep the commercial shooting of porn in Aquinnah "a secret" from their "location owner" as well in this instance. In my opinion, that conduct places your clients squarely in the sights of a Chap. 93A claim.

Third, I respectfully suggest that you refine your understanding of the Massachusetts Consumer Protection Act relative to your assertion that: *"Any claims that Ms. Bassett attempts to assert against my clients... necessarily fail for lack of privity of contract."* In a 93A action, that proverbial train left the station decades ago as a viable defense to liability. *See, e.g.,* Burnham v. Mark IV Homes, Inc., 387 Mass. 575 (1982).[2]

---

[1] That quoted assertion also appears to be quite at odds with Ms. Jensen's communications with Barbara Bassett and my client in March 2015 where **she claimed** both that she was Mr. Spafford's employer, and that she had made arrangements with him (including physical possession of an entry key to the residence) to take over his leasehold for the remainder of its term. Perhaps you are denying that Ms. Jensen made such representations or had that entry key to Ms. Bassett's premises, -- after Mr. Spafford clearly made it known in his March 15 email that **he** had abandoned the premises for the duration of the Lease's remaining term.

[2] In Maillet v. ATF-Davidson Co., 407 Mass. 185, 191 (1990), the SJC noted: *"Nor has a lack of privity between plaintiff and defendant previously barred recovery under c. 93A, s.9. In Van Dyke, supra, for*

In short, your clients cannot "magically" escape all liability to Ms. Bassett for their unauthorized and unlawful commercial porn activities conducted on her premises, and all direct and consequential damages suffered by her thereby, simply on the technical and pedantic grounds that it was Mr. Spafford who signed the Lease with her, not them.[3] Indeed, the very assertion of such a specious "defense" constitutes in my view a further violation of Chap. 93A as a form of unfair and deceptive settlement practice that violated the very spirit of Section 9's demand letter requirement.

Similarly, your clients' refusal to respond to the numerated Informational Queries (i.) thru (xiii.) presented as a non-monetary demand constituted a further violation of that Act. By contrast, Mr. Spafford provided us with 35 "porn pseudonym" names from memory per Query #(i.) as to persons who were filming and/or residing on Ms. Bassett's premises during his time there. He could not provide all of their legal names or the other requested information in that Query, while reporting that Ms. Jensen or her Production Manager, April Carter a/k/a Diana Devoe, should be able to do so from their file records. He indicated that none of them were there as social guests, but rather, had all been contacted and solicited by Ms. Jensen or Ms. Carter to come to the Vineyard for hire to participate in the commercial porn videos that she was shooting "in secrecy" on behalf of Mile High.

Fourth, both Ms. Bassett and I viewed your claim that *"based upon the language and tone of your letter, you make clear your client's threats are based on her disdain and personal animus toward the homosexual and transsexual community"*, to be a deliberate and calumnious mischaracterization. As clearly stated in the demand letter's first full paragraph on page 4, Ms. Bassett's fundamental objection is to the unauthorized and offensive use of her personal residence for **any** commercial production of **any** pornography of whatever nature. It does, however, strike me as conspicuously disingenuous for you or your clients to object to the characterization of the porn films and stills as "normal" or "not normal" in your letter's ensuing sentence, when every one of the fourteen porn films created, owned, and marketed by your clients that we have reviewed so far since the posting of the Oct. 6 demand letter display the following *"**WARNING**"* in bold letters: *"**Sexual activities depicted in this Video/DVD may be medically harmful. In addition they are NOT necessarily healthy, safe, or suggested.**"* That conspicuous

---

*example, the plaintiffs, who had brought suit against a physician for malpractice, also brought suit against the physician's malpractice insurer for unfair claim settlement practices. We held that these claimants against the defendant insurer's insured were proper plaintiffs under s. 9, even though the plaintiffs had no contractual relation whatsoever with the defendant insurer."*

[3] By my layman's understanding, the copyright owner, writer, director, production manager, and distributor are each significantly higher up the food chain than a cameraman/employee in the movie-making/profiteering industry. Thus, while we certainly intend to name Mr. Spafford as a co-defendant, your clients would appear to be the far bigger and more significant fish per that analogy.

"Warning" is not, in fact, the only reason why I seriously doubt that it would prove beneficial to your clients to get into a debate before a judge or jury as to the "normality" of some of the porn films that were shot on my client's premises, but that will remain a debate for another day.

You state a willingness in your Conclusion section *"to discuss this matter"* with me, but I do not presently see any real value in doing so. Your clients elected to respond to the 93A demand letter by offering $.00 by way of any counteroffer to my client's proposed demands characterized by you as *"tantamount to extortion"*. We are left with such a wide chasm in our clients' respective assessments of their legal positions (replete with your last paragraph's vague threat of pursuing legal action against Ms. Bassett), that I/we intend to simply go forward with resolving this matter via the judicial processes available to her. In that regard, I would appreciate knowing whether you will be able to accept service of process on behalf of your clients as an initial professional courtesy?[4]

Very truly yours,

John A. Taylor

JAT/wc
cc: Ms. Leah Bassett

---

[4] While I cannot give you a precise timeframe as to when I reasonably anticipate filing the intended lawsuit against your clients (and perhaps other named defendants, besides Mr. Spafford), I do not expect to be ready to do so before the end of 2015. I would expect, however, to have any plaintiff's co-counsel or other remaining details in preparing that lawsuit completed within the initial months of 2016.

**Little Miss Sunshine** @NicaTheory · 7h

Its great to work in a state where shooting porn is completely legal & our location owners don't have to keep us a secret. #NewHampshire

| RETWEETS | FAVORITES |
|---|---|
| 4 | 6 |








5:19 PM - 15 Jul 2015 · Details



# ROACH, IOANNIDIS & MEGALOUDIS, LLC

Attorneys at Law
50 Congress Street, Suite 400
Boston, Massachusetts 02109-4061

Telephone 617-723-2800
Facsimile 617-723-4313
www.rimlawyers.com

Natalie R. Megaloudis, Esq.*
NRMegaloudis@rimlawyers.com
*of counsel

January 4, 2016

**By First Class and Certified Mail**
**Return Receipt Requested**

John Anthony Taylor, Esq.
TAYLOR LEGAL COUNSEL
18 Central Square
Bristol, NH  03222

RE: **Notice to Ms. Leah Bassett to Cease and Desist all Conduct Constituting Defamation, Commercial Disparagement, and Intentional Interference with Business and Contractual Relations Concerning Mile High Media Distribution**

Dear Attorney Taylor:

I am writing on behalf of my client, Mile High Media Distribution ("Mile High Media"), in response to tortious and defamatory correspondence that you have served on my client's customers on behalf of your client, Ms. Leah Bassett ("Ms. Bassett").

You and your client are hereby directed to immediately:

**CEASE AND DESIST ALL DEFAMATION AND COMMERCIAL DISPARAGEMENT OF MILE HIGH MEDIA AND ITS INDIVIDUAL OWNERS AND EMPLOYEES AND CEASE AND DESIST ALL OTHER TORTIOUS AND UNLAWFUL CONDUCT AGAINST MILE HIGH MEDIA, INCLUDING INTENTIONAL INTERFERENCE WITH ITS BUSINESS AND CONTRACTUAL RELATIONS.**

Mile High Media has recently learned that you have been spreading false, destructive, commercially disparaging and defamatory information about its character, reputation and/or business practices on behalf of your client.  Moreover, Mile High Media has also learned that you have been committing other intentional, tortious and unlawful conduct in interference with Mile High Media's business relations.

CEASE AND DESIST LETTER - LEAH BASSETT
January 4, 2016
Page 2 of 3

Under Massachusetts law, it is unlawful to engage in defamation of another's reputation. In a claim for defamation, the plaintiff must show that the defendant was "[1] at fault for the publication of a false statement regarding the plaintiff, [2] capable of damaging the plaintiff's reputation in the community, [3] which either caused economic loss or is actionable without proof of economic loss." *White v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 442 Mass. 64, 66, 809 N.E.2d 1034, 1036 (2004).

It is also unlawful in Massachusetts to spread false and commercially disparaging statements about another's services for sale that cause economic loss. In a claim for commercial disparagement, the plaintiff must show that the defendant "(1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss." *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 523, 984 N.E.2d 755, 763 (2013).

Finally, it is unlawful in Massachusetts to intentionally interfere with another's contractual or anticipated business relations with improper motives or through improper means. In a claim for intentional interference with business relations, the plaintiff must show: "(1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly caused a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Blackstone v. Cashman*, 448 Mass. 255, 260, 860 N.E.2d 7, 12-13 (2007).

To date, Mile High Media has become aware of documented incidents in which you have made statements and committed acts constituting defamation, commercial disparagement, and/or intentional interference with my client's business relations. Your unlawful conduct includes, but is not limited to, the following:

Your written statements, in the form of a purported demand letter, dated November 28, 2015, to Mile High Media's customers, TLAgay and TLA Entertainment Group, in which you falsely and disparagingly claim that Mile High Media violated your client's rights and attempt to induce its customers to cease conducting business with Mile High Media under the threat of being named in a federal lawsuit.

CEASE AND DESIST LETTER - LEAH BASSETT
January 4, 2016
Page 2 of 3

Mile High Media herein demands that you and your client immediately: (A) cease and desist your unlawful defamation and commercial disparagement of Mile High Media and its individual owners, employees and agents, (B) cease and desist all other intentional, tortious and unlawful interference with Mile High Media's business relations, and (C) provide Mile High Media with written assurances within ten (10) days that you will cease and desist from further defamation, commercial disparagement, and other intentional, tortious and unlawful conduct against Mile High Media and its individual owners.

If you fail to comply with this cease and desist demand within the abovementioned time period, Mile High Media is entitled to seek monetary damages and equitable relief for your and your client's defamation, commercial disparagement, and other tortious conduct. In the event you fail to meet this demand, please be advised that Mile High Media has instructed me to communicate to you that it will pursue all available legal remedies, including monetary damages, injunctive relief, and an order that you pay court costs and attorney's fees. Your client's liability and exposure in such a legal action could be substantial.

Please be advised that in making the abovementioned demand, my client does **not** waive, but expressly reserves, all of its rights, claims, counterclaims, defenses, legal remedies and/or other lawful courses of action.

Very truly yours,
Mile High Media
By its attorney,

Natalie R. Megaloudis

NRM/tjm

**JOHN ANTHONY TAYLOR, ESQUIRE**
**TAYLOR LEGAL COUNSEL**
***(Practicing Exclusively in Massachusetts)***
**18 CENTRAL SQUARE**
**BRISTOL, NEW HAMPSHIRE  03222**
**(603) 744-8000**
**(603) 744-8585 (Fax)**

ANTHONY TAYLOR (1749-1826)
AMOS TAYLOR (1784-1866)
MOSES L. TAYLOR (1810-1892)
FRANKLIN L. TAYLOR (1844-1929)
AMOS L. TAYLOR (1877-1965)
A. LEAVITT TAYLOR (1912-1991)

OF COUNSEL
ADAMS & BLINN, P.C.
43 THORNDIKE STREET
CAMBRIDGE, MA 02141
(617) 577-9700
(617) 494-9068 (FAX)

January 21, 2016

Natalie R. Megaloudis, Esq.
Roach, Ioannidis & Megaloudis, LLC
50 Congress Street, Suite 400
Boston, MA  02109-4061

Re:  Claims of unfair or deceptive acts or practices arising from unauthorized
commercial and offensive use of Leah Bassett's residential premises

Dear Atty. Megaloudis:

I write this letter in response to your "cease and desist" missive/notice, dated 1/04/16 and received on 1/08/16. I was alternately surprised, bemused, and offended by its substantive content and threatening tone. It did appear rather consistent, however, with your initial letter of 11/17/15. I offer the following points in rejoinder.

(1.) Your assertion that my 93A Demand Letter, dated 11/28/15 and directed to TLAgay and TLA Entertainment Group, gave rise to actionable tort claims by your client, Mile High Media, is utterly ridiculous. In promptly forwarding your letter to my client, Ms. Bassett, I included the enclosed two-page excerpt from a textbook published in 1977 that I had on hand in my home study from my own law school Professional Practice & Responsibility course. Applying that recitation of the so-called "litigation privilege" to Massachusetts authority, my now deceased friend and colleague, Justice Rudolph Kass, summarized the privilege as follows in Doe v. Nutter, McClennen & Fish, 41 Mass. App. Ct. 137, 140-41 (1996):

> *The plaintiffs, however, misconstrue the privilege which attaches to statements made by an attorney "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." Sriberg v. Raymond, 370 Mass. at 109. The privilege is absolute. Theran v. Rokoff, 413 Mass. at 591-592. Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. 359, 361 (1981). An absolute privilege provides a complete defense even if the offensive statements are uttered maliciously or in bad faith. Correlas v. Vivieros, 410 Mass. 314, 319 (1991). Mulgrew v. Taunton, 410 Mass. 631, 634 (1991). In addition, the absolute privilege which attaches to those statements protects the maker from any civil liability based thereon. Correlas v. Vivieros, 410 Mass. at 324. Robert L. Sullivan, D.D.S., P.C. v. Birmingham, 11 Mass. App. Ct. at 367-368. See Frazier v. Bailey, 957 F.2d 920, 932 (1st Cir. 1992)(claims for*

*negligence, defamation, intentional infliction of emotional distress, and violation of Massachusetts Civil Rights Act based on communications preliminary to litigation and during pendency of litigation were entitled to absolute immunity from civil liability under Massachusetts law).  To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory.* Correlas v. Vivieros, *410 Mass. at 324.* Robert L. Sullivan, D.D.S., P.C. v. Birmingham, *11 Mass. App. Ct. at 367-368.*

    The plaintiffs' four-fold tort claims in Doe arose from statements made by a lawyer on behalf of his client in response to a 93A demand letter.  Besides summarily dismissing the claims per the absolute litigation privilege, the trial court awarded attorney's fees to the defendant lawyer/law firm as a Rule 11 sanction assessed personally against the plaintiffs' counsel for filing such a frivolous action in the first place, -- which led, in turn, to an "*award* (of) *double costs against plaintiffs' counsel based on the frivolous nature of this appeal."* Id. at 138.  See Winthrop Corp. v. Lowenthal, 2 Mass. L. Rep. 14 (Super. Ct., 1994) (absolute immunity for statements made by an attorney in a G. L. c. 93A demand letter).  Quite frankly, any competent lawyer should be familiar with the litigation privilege, which extends to my client as well per Section 587 of the Restatement (Second) of Torts,[1] although I will accord you the benefit of the doubt, Ms. Megaloudis, in assuming that your misguided letter derived from simple ignorance of that time-honored privilege rather than from a calculated, knowing, and unethical attempt to make such legally unsustainable claims/threats against both my client and me.[2]

    (2.) On the plus side from my perspective, your letter did indirectly provide confirmation of TLA's apparent receipt of the 11/28/15 Demand Letter.  As you may already know by now, I sent out a Second Demand Letter, dated 1/06/16, by certified mail that was prompted, in part, by the absence of any response to the initial one sent by regular mail.  Having confirmed its delivery via a signed receipt, I enclose a courtesy copy for your review/records.

---

[1] My own familiarity with that privilege generally may have been enhanced by the fact that I taught the first-year law courses on Torts and Property respectively, the second-year law course on Professional Responsibility, and, a third-year law course on Advanced Civil Trial Skills while on the faculty at Temple University School of Law in the mid-1980s, but that was 30+ years ago.  I note that the Reporter's Comments to Section 586 of the Restatement, as well as the Sriberg decision cited by Justice Kass provide more detailed explanations of the history and rationale behind the litigation privilege, including its quoted endorsement by one of Massachusetts' most renowned Chief Justices, Lemuel Shaw, in Hoar v. Wood, 3 Metcalf 193, 197-198 (1841).

[2] Noting that a significant portion of my law practice over the years, including a stint as Associate Counsel to the MA Board of Bar Overseers in the early-1990s, has centered on attorney and other forms of fiduciary conduct and/or malpractice, it would be in my view a patent violation of Rule 4.1 at a minimum of the Mass. Rules of Professional Conduct if you **were** familiar with the litigation privilege when you sent that misguided letter to me.  That Rule, titled *"Truthfulness in Statements to Others",* states in pertinent part: *"In the course of representing a client a lawyer shall not knowingly:  (a) make a false statement of material fact  or law to a third person;..."*

As you will see, that most recent Demand Letter included some amplified focus on the copyright infringement aspect of Ms. Bassett's claims against both your client(s) and its "customers"/agents in marketing and selling those porn films/stills shot on my client's residential premises without her knowledge or permission. Your clients were already placed on notice of that infringement claim per Footnote 5 of the 10/06/15 Demand Letter, but chose not to address it or propose any remedial measures and/or monetary settlement.

(3.) It does seem exceedingly foolish for your clients to have deliberately used Ms. Bassett's personal artwork and other distinctive furnishings as a backdrop to many of the graphic porn scenes shot on her premises for commercial purposes and profit. It violated the most basic precepts and standards promulgated by the American Society of Media Photographers (among others, I would imagine, such as ASCAP), and understood by any experienced and **reputable** film director/videographer. Moreover, it appears to have been known to the credited director, "Nica Noelle", of those porn films/videos that Ms. Bassett was a professional artist. On that subject, Mr. Spafford has advised me in writing that he repeatedly attempted to dissuade Ms. Jensen/Noelle as his employer/director from including Ms. Bassett's unique and readily-identifiable artwork/furnishings in those porn films/stills. Evidently, your clients believed that they contributed appreciably to the artistic, aesthetic, and commercial "value" of those films.[3]

(4.) Separate and apart from the absolute litigation privilege and your attendant misuse of the term "defamation",[4] your letter failed to identify **any** specific word, phrase, or sentence in my 11/28/15 Demand Letter to TLA that your client, Mile High Media, contends was factually erroneous, ridiculed anyone associated with Mile High Media, and/or treated your client(s) with contempt. If you would like to provide me with a verified affidavit from Mr. Blitt or Ms. Jensen/Noelle that credibly establishes some factual misstatement(s) expressed in any of the 10/06/15, 11/28/15, and 1/06/16 Demand Letters, I will take his or her averments under oath into whatever consideration strikes me as warranted in the drafting of Ms. Bassett's impending Complaint.

---

[3] One prophylactic measure in limiting the rising ceiling of statutory damages per Section 504 of the Copyright Act from all future sales/viewings of the affected Icon Male and Transsensual films would be to digitally "blur" all depictions of Ms. Bassett's personal artwork/furnishings, -- as commonly seen in music videos, documentary films, newscast clips, etc., -- and we will argue that your client(s)' failure to proactively take or proffer that remedial step since their receipt of the 10/06/15 Demand Letter is a continuing and significant violation of Chapter 93A's proscription against *"unfair or deceptive acts or practices in the conduct of any trade or commerce."*
    Referencing that Copyright Infringement WARNING, quoted in the enclosed 1/06/16 letter, that your client(s) prominently display on all of the affected Icon Male and Transsensual films, I do not presently have any strong opinion as to whether the touted FBI would see fit to investigate and institute felony charges against any one of your clients or their distributors/agents for their non-"fair use" infringement of my client's copyrighted works.

[4] As defined in the Correlas decision: *"Defamation is the publication of material **by one without a privilege to do so** which ridicules or treats the plaintiff with contempt."* 410 Mass. at 319 (Emphasis added).

In that regard, it does seem pretty obvious that if Mile High Media presently believes that the 11/28/15 Demand Letter cast it or its owners, employees and agents in an unfavorable light, or otherwise caused it some economic loss, the impending lawsuit will do so in a far more public, expansive, and expensive manner. Where our clients presumably differ is in their respective assessment of just how sleazy, offensive, and tortious the circumstances were behind the unauthorized use of Ms. Bassett's premises for the commercial creation of graphic porn (coupled with the unusually high degree of physical damages to her personal residence and the non-payment of rent, utilities, and damages reimbursement, -- either per the residential leasehold with Mr. Spafford, or per the *quantum meruit* value of her premises' use for the unlawful commercial purposes specific to Mile High Media and Ms. Jensen/Noelle).

(5.) Your letter included a particularly conclusory claim that appeared to be separate from its stated objection to the 11/28/15 Demand Letter to TLA per the accusation that: *"Moreover, Mile High Media has also learned that you have been committing other intentional, tortious and unlawful conduct in interference with Mile High Media's business relations."* I demand that you clarify with full specificity for my personal and professional edification what *"other intentional, tortious and unlawful conduct"* you and your client(s) purport to be accusing me of having **unlawfully** committed.

I regard making such a pointed, calumnious, and threatening accusation against any fellow attorney and officer of the court to be a very serious matter, -- and certainly more so when such a charge is directed at me personally and professionally. Consequently, you will provide me with either a full description of that *"... unlawful conduct"* on my alleged part, or a formal retraction and expression of apology, within ten (10) days of the stated and emailed date of this letter. If you do not do so, I **will** promptly file a complaint against you with the Massachusetts Board of Bar Overseers.

(6.) I assume that you did receive my 11/27/15 letter that was both emailed and posted to you, notwithstanding the lack of any response to the several points expressed therein or any other intervening communication prior to your 1/04/16 "cease and desist" missive/notice. Kindly respond to my inquiry therein as to *"whether you will be able to accept service of process on behalf of your clients"*. I intend to begin preparing my client's formal Complaint for filing in the U.S District Court later this month.

                                                            Very truly yours,

                                                            John A. Taylor

JAT/ck
cc: Ms. Leah Bassett
Enc.s

**JOHN ANTHONY TAYLOR, ESQUIRE**
**TAYLOR LEGAL COUNSEL**
*(Practicing Exclusively in Massachusetts)*
18 CENTRAL SQUARE
BRISTOL, NEW HAMPSHIRE  03222
(603) 744-8600
(603) 744-8685 (Fax)

ANTHONY TAYLOR (1749-1826)
AMOS TAYLOR (1784-1866)
MOSES L. TAYLOR (1810-1892)
FRANKLIN L. TAYLOR (1844-1929)
AMOS L. TAYLOR (1877-1965)
A. LEAVITT TAYLOR (1912-1991)

OF COUNSEL
ADAMS & BLINN, P.C.
43 THORNDIKE STREET
CAMBRIDGE, MA 02141
(617) 577-9700
(617) 494-9068 (FAX)

February 1, 2016

Natalie R. Megaloudis, Esq.
Roach, Iannidis & Magaloudis, LLC
50 Congress Street, Suite 400
Boston, MA  02109-4061

Re:  <u>Claims of unfair or deceptive practices arising from unauthorized
commercial and offensive use of Leah Bassett's residential premises</u>

Dear Atty. Megaloudis:

I acknowledge receipt of your 1/27 voicemessage and your 1/28 email, but would prefer to maintain a written record of our communications for the time being. Our letters, of which this will be the 6th, have not yet become torrential in number or length in my view. Nor have I yet seen **any** area or degree of common ground that would make it productive for us to engage in a back-and-forth verbal discussion in the hope of reaching a settlement that was mutually agreeable to our respective clients. More immediately, I was perfectly serious in numbered section 5 of my 1/21/16 letter in the demand for a **written response** from you as to that offensive accusation against me personally (which, I note, would be libelous if not for the litigation privilege), and I do not believe that a "live" exchange between us is merited until you have either justified that claim of *"intentional, tortious and unlawful conduct"* on my part, or retracted and apologized for lodging such a seemingly erroneous, unprofessional, and discourteous charge against me.

That voicemessage reference to wanting to pursue the claimed "recent" discovery on your part of the nearly completed settlement agreement reached between our clients at the outset of this dispute struck me as a complete "dead end" route. You have already reviewed Mr. Spafford's "anticipatory breach" 3/15/15 email, as well as Ms. Bassett's 3/22/15 response with its $4,000 settlement offer, because they were attached as exhibits to the 10/06/15 Demand Letter. Mr. Spafford emailed Ms. Bassett on 3/28/15 and stated that he would promptly tender the proffered $4,000 settlement sum *"by midweek"*. On 3/29/15, Ms. Jensen initiated a text exchange with Ms. Bassett in which she represented that she and her business partner were willing to pay the $4,000 sum in response to threatening and "extortionist" communications received from Mr. Spafford that purportedly frightened Ms. Jensen to the point that she was literally *"shaking right now"* as she was texting her exchange, but premised upon a written release of all claims signed

EXHIBIT 2  (9-2 pgs)

by Ms. Bassett.[1]  Ms. Jensen also made it known in that text exchange that she had changed her mind about signing the affidavit that they had discussed in their prior telephone conversation (and referenced in the 3/22 letter to Mr. Spafford).  There were no further communications between our clients after that 3/29 text exchange, while my client continued to believe for a number of days/weeks thereafter that Mr. Spafford was going to "make good" on his 3/28 commitment.  And of course, there was the ensuing discovery independently by Ms. Bassett as to the unauthorized use of her residence for the porn production purposes.  That unwelcomed discovery changed the entire equation as to what my client would be willing to accept as a negotiated settlement, as plainly made known in her 93A Demand Letter.  In short, your phone message suggestion of "reviving" in effect the $4,000 settlement figure is a non-starter.

If your clients are interested in a genuine settlement discussion with us that does not revolve around a "shot in the dark" $3,000,000 liquidated damages sum, the starting point would be for them to answer fully and in good faith the 13 Informational Demands set forth on pages 10 & 11 of the Demand Letter.  They **will** be compelled to answer those queries in discovery if this matter proceeds to litigation (by which time their liability for both their own, and my client's, attorneys' fees will be appreciably higher), and so, I would be inclined to view their doing so fully and credibly in advance of the lawsuit's filing as indicative of a good faith desire to **begin** at least a negotiated settlement discussion.  Otherwise, Ms. Bassett is resolved to the necessity of proceeding forward in her quest for monetary damages that are both compensatory and punitive in nature, as well as for injunctive relief.

Noting that the 10-day deadline stated in my 1/21 letter for your aforesaid written response expires today (not counting yesterday as the actual 10th full day, since it was a Sunday), I will extend that deadline to this Friday as an intended courtesy in recognition of your attempts last week to engage in a verbal discussion instead.

Very truly yours.

John A. Taylor

JAT/ck
cc: Leah Bassett

P.S.  I realized that the Jensen/Bassett text exchange occurred on 3/27/1 not 3/29 (which was the date that I printed it off for my file).

---

[1] Your clients evidently learned of the $4,000 figure from Mr. Spafford, since the only communications with Ms. Jensen by Barbara Bassett and Leah Bassett respectively occurred prior to the 3/22/15 letter.  It is our present assumption that Mr. Spafford was threatening to "blow the whistle" on the unauthorized and unlawful use of my client's premises for the commercial production of porn if your clients did not come up with the $4,000, which he was anticipating would be forwarded to him to tender to her at the time of his 3/28 email.  Your clients presumably did not trust Mr. Spafford's ability and/or self-interest in securing what they viewed as an adequate Release of All Claims from Ms. Bassett, leaving it to Ms. Jensen instead to manipulatively communicate that pre-condition.

# ROACH, IOANNIDIS & MEGALOUDIS, LLC

Attorneys at Law
50 Congress Street, Suite 400
Boston, Massachusetts 02109-4061

Telephone 617-723-2800
Facsimile 617-723-4313
www.rimlawyers.com

Natalie R. Megaloudis, Esq.*
NRMegaloudis@rimlawyers.com
*of counsel

February 9, 2016

By Electronic (jataylor317@gmail.com)
and First Class Mail

John Anthony Taylor, Esq.
TAYLOR LEGAL COUNSEL
18 Central Square
Bristol, NH  03222

RE:   Response to Letters Dated January 21, 2016 and February 1, 2016

Dear Attorney Taylor:

    I am writing this letter at your request as you have expressed an interest in not returning my voicemail message left in an effort to resolve and address our respective clients' disputes.  This letter is also to respond to your apparent offense taken to the Cease and Desist letter I sent to you, on behalf of your client, Ms. Leah Bassett ("Ms. Bassett").

    To address the latter point first, let me clarify.  As the heading of the Cease and Desist letter makes clear, the purpose of the letter was to put your client, Ms. Bassett, on Notice to Cease and Desist all Conduct in which she has wrongfully committed against my client, *to wit*, Commercial Disparagement and Intentional Interference with my client's Business and Contractual Relations.  The "you" referenced in the letter was directed to you as agent, as it is not my practice to threaten or engage in *ad hominem* attacks against fellow members of the bar.  In my experience, such actions result in no advantage to our clients and simply detract from the substantive issues for which they retain our counsel.  While I maintain that the Cease and Desist letter made clear my client's intention to pursue Ms. Bassett <u>directly</u> for these claims, to the extent you construed my letter as an "offensive accusation against you personally", hopefully this letter will give you comfort.

    Second, with respect to your purported rebuttal to my voicemail message referencing pertinent information regarding prior discussions between our clients, I do not understand how you can refute my contention without having returned my voicemail message to learn what information I was referring to.  Rather than return my call or seek to inquire further, you instead engage in lengthy posturing about issues you apparently felt compelled to relay, but had no bearing on the information I had called to discuss with you.

John Anthony Taylor, Esquire
February 9, 2016
Page 2 of 2

You are, however, correct on two points: 1) my clients will not engage in negotiations in an amount you yourself categorize a 'shot in the dark' three million dollar demand; 2) nor will we further elaborate on our prior response to your purported Demand Letter. We have fully responded to your letter to the extent your allegations asserted claims that were remotely actionable.

My clients stand ready to litigate this matter in court and assert their counterclaims against Ms. Bassett. I reiterate, however, given your client's potential liability and your client's alleged concern about the public exposure and scrutiny protracted litigation would entail, that further communication efforts at resolution should take place between us as lawyers before proceeding in the litigious manner you seem to be resolute in pursuing through letter writing. To that end, my clients would agree to tender Ten Thousand ($10,000.00) dollars as a final offer of settlement, and exchange of releases of all claims and counterclaims executed by our respective clients. Your client has ten (10) days to accept this offer, following which this offer is withdrawn.

Very truly yours,
Mile High Media and Monica Jensen
By their attorney,

Natalie R. Megaloudis

NRM/tjm

cc:   Mile High Media
      Monica Jensen