UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEAH BASSETT,<br>    Plaintiff,<br><br>v.<br><br>MONICA JENSEN, d/b/a NICA NOELLE; JON BLITT,<br>in his Personal Capacity & d/b/a MILE HIGH MEDIA,<br>ICON MALE, and TRANSSENSUAL; MILE HIGH<br>DISTRIBUTION, INC.; JOSHUA SPAFFORD, d/b/a<br>JOSHUA DARLING; APRIL CARTER, d/b/a DIANA<br>DEVOE; TLA ENTERTAINMENT GROUP, d/b/a TLA<br>GAY and TLA DISTRIBUTION; and GAMMA<br>ENTM'T, d/b/a CHARGEPAY B.V.,<br>    Defendants. | CIVIL ACTION<br>No. 18-cv-10576-PBS |

**THE DEFENDANTS, MONICA JENSEN, JON BLITT, MILE HIGH MEDIA, AND MILE HIGH DISTRIBUTIONS, INC.'S MOTION FOR PRELIMINARY INJUNCTION TO PROHIBIT DISPARAGING AND PREJUDICIAL STATEMENTS REGARDING THE PARTIES OR CLAIMS IN THIS MATTER**

The Defendants Monica Jensen, Jon Blitt, Mile High Media, and Mile High Distribution, Inc. (collectively "the Defendants" or "Mile High") in this matter move this Honorable Court to enjoin John A. Taylor, Esq. ("Attorney Taylor"), counsel for the Plaintiff, Leah Bassett ("Plaintiff" or "Bassett"), from communicating with the press and media and on-line bloggers in a disparaging prejudicial manner as to the Defendants, and from threatening or intimidating potential witnesses and/or additional parties to this case.

## BACKGROUND

### A. Facts Regarding the Underlying Dispute.

On or about October 4, 2014, the Plaintiff entered into a written lease agreement with the Defendant, Joshua Spafford ("Spafford"), a photographer, to lease her Martha's Vineyard residence, located at 7 Skye Lane, Aquinnah, MA 02535 ("premises"), from that date until May

15, 2015 for his personal use as a resident. At no time were the Defendants ever parties to, nor were they aware of, the terms of Spafford's lease or tenancy at the premises. During his tenancy, Spafford allowed individuals including, but not limited to, Monica Jensen ("Jensen" a/k/a "Nica") and Mile High to use the premises to record scenes to be used in adult films. The Plaintiff alleges in this action that the premises were damaged in the course of Spafford's tenancy and that certain personal artwork was allegedly improperly videotaped in the background of some scenes in the films. The trouble began when Spafford left without paying the Plaintiff some portion of his rent owed back in 2014.

In the fall of 2017, Attorney Taylor and counsel for Mile High began discussions in the goal of resolving these issues outside of court. These discussions concluded with an email from Mile High's attorney, Natalie Megaloudis ("Attorney Megaloudis"), to Attorney Taylor on October 13, 2017 requesting more information from Plaintiff as to her alleged damages. This email went unanswered.

Rather, on March 26, 2018, the Plaintiff filed a Verified Complaint raising ten (10) counts against various Defendants, including Mile High and Jensen, alleging improper use of the premises, copyright infringement, infliction of emotional distress, and other related claims. On March 28, 2018, Attorney Taylor sent an email to Attorney Megaloudis stating that he "was not pleased with [her] Oct.[ ]13 email, and decided in response that the best course was simply to go forward with the lawsuit" (**Ex. 1, Attorney Taylor's email dated 3/28/18**), rather than respond to Attorney Megaloudis' request.

### B. Attorney Taylor's Statements to the Media and Negative Publicity as to Mile High and Jensen.

In the same email on March 28, 2018, Attorney Taylor indicated that "there has been quite a flurry of media buzz over the past 36 hours . . . none of it initiated by anyone associated with the Plaintiff." (**Ex. 1**). However, in a news story to the Vineyard Times, Attorney Taylor stated that his client felt "the perceived need to 'go public' with her legal grievances" even before filing the Complaint. (**Ex. 2, Vineyard Times Article**). Within a week of Attorney Taylor's report to the Vineyard Times, the story went viral and was published internationally. Articles about this matter reached news sources in Rhode Island, New York, Washington, D.C., Seattle, Montreal (where Mile High is domiciled), and even the United Kingdom.[1] Attorney Taylor admitted to having written "a brief written statement to a reporter with . . . Law360,"

---

[1] As an example of how far the news of this case has spread, the following news outlets, inter alia, have reported or republished various portions of Plaintiff's lawsuit: The Boston Globe; The Providence Journal (Rhode Island); The Real Deal (New York, NY); The New York Post (New York, NY); The Daily Caller (Washington, D.C.); The Seattle Times (Seattle, WA); CBC Radio-Canada (Montreal, Canada); Daily Mail (United Kingdom); and The Sun (United Kingdom). See Steve Annear, What if your house was used in a porn shoot? This homeowner says hers was, and she's suing, BOSTON GLOBE (Mar. 28, 2018), accessible at http://www.bostonglobe.com/metro/2018/03/28/martha-vineyard-woman-files-suit-alleging-her-home-was-used-film-pornography/hfgoBYNGzBnaQ2yoob6l2K/story.html; Madeline List, Martha's Vineyard woman says tenant, others made house a setting for graphic videos, THE PROVIDENCE JOURNAL (Mar. 29, 2018), accessible at http://www.providencejournal.com/news/20180329/marthas-vineyard-woman-says-tenant-others-made-house-setting-for-graphic-videos; Erin Hudson, Martha's Vineyard home featured in numerous pornos sparks lawsuit, THE REAL DEAL (Mar. 31, 2018), accessible at https://therealdeal.com/2018/03/31/marthas-vineyard-home-featured-in-numerous-pornos-sparks-lawsuit/; Joshua R. Miller, Martha's Vineyard homeowner says rental was used as porn set, NEW YORK POST (Mar. 29, 2018), accessible at https://nypost.com/2018/03/29/marthas-vineyard-homeowner-says-rental-was-used-as-porn-set/; Gabrielle Okun, Woman Files Lawsuit After Her Martha's Vineyard Rental Was Allegedly Used In 24 Porn Films, THE DAILY CALLER (Mar. 29, 2018), accessible at http://dailycaller.com/2018/03/29/marthas-vineyard-rental-used-for-porn; The Associated Press, Woman sues after rental home was used to shoot pornography, THE SEATTLE TIMES (Mar. 28, 2018), accessible at https://www.seattletimes.com/nation-world/woman-sues-after-rental-home-was-used-to-shoot-pornography/; The Associated Press, Montreal porn company sued for filming in 'nearly every room' of woman's home, CBC RADIO-CANADA (Mar. 29, 2018), accessible at http://www.cbc.ca/news/canada/montreal/mile-high-media-montreal-leah-basset-lawsuit-filming-marthas-vineyard-1.4598458; Hannah Parry, Woman sues after her Martha's Vineyard rental home was used to film porn without her knowledge with the actors having sex EVERYWHERE, DAILY MAIL (Mar. 29, 2018), accessible at http://www.dailymail.co.uk/news/article-5559933/Woman-sues-Marthas-Vineyard-rental-home-used-film-porn.html; RENT FOR SEX Landlady sues ex-tenant after discovering nearly every room of her home used as disturbing porn set, THE SUN (Mar. 29, 2018), accessible at https://www.thesun.co.uk/news/5928259/landlady-sues-tenant-rooms-house-porn-set-disturbing/.

which he then "made available to the Editor of the Vineyard Times." The Vineyard Times article stated the following:

> In a statement to The Times, attorney John Taylor, who represents Bassett, expressed the difficulty Bassett had pursuing a lawsuit.
>
> "My client is a very private individual who was/is very unhappy <u>about the perceived need to 'go public' with her legal grievances</u> against these <u>unscrupulous</u> purveyors of porn," Taylor wrote. "She is a strong supporter of artistic expression and the associated First Amendment protections afforded to artists and all other citizens/residents of the U.S."
>
> <u>Taylor wrote that Mile High has a history of "predatory practices" in its past.</u> "The added fact that Mile High chose to relocate their porn production activities from California to a <u>state that was ground zero for the sexual misconduct charges brought against priests in the Catholic church</u> in past decades, as well as the location for the sensationalist <u>and gruesome pederast-based murder of Jeffrey Curley</u> in 1997 simply adds to the emotionally disturbing and objectionable nature of some of the <u>predatory-themed 'fantasy' porn films</u> that were produced in secrecy on Ms. Bassett's and property owner's premises," he wrote. He called the decision to use some of Bassett's artwork in the films "especially galling."

(**Ex. 2**) (emphasis added).

Attorney Taylor began and fomented this international news smear campaign even though he had not yet (and still has not) served any of the Defendants. Defendants' counsel obtained the Complaint (but not all the exhibits as some were not accessible) on the Pacer system.

Attorney Taylor's aforementioned statements defame Mile High and the other Defendants in this suit with the goal to publicly prejudice their defense. There exists absolutely no basis or justification for associating Mile High or Jensen with the instances of sexual abuse in the Catholic church or the attempted sexual assault and murder of 10- year-old Jeffrey Curley. Nor was it appropriate for Attorney Taylor, to mischaracterize Mile High's films as "predatory-themed" in his statements. Rather, these defamatory remarks which have absolutely no

relevance to the claims in this action, are evidence of Attorney Taylor and Plaintiff's clear intent to inflame and prejudice the public against the Defendants.

As a result of the widespread media attention and public commentary that sprouted from Attorney Taylor and the Plaintiff's decision to "go public" and the salacious comments posted online[2], Attorney Stephen Roach, counsel for the Defendants, issued a general limited rebuttal statement that the matter arose from a basic landlord-tenant dispute between the Plaintiff and a third party, and the allegations in the complaint were unfounded.

Attorney Taylor's conduct, however, did not stop there.

### C. Attorney Taylor's Six-Page Letter to Blogger Zachary Sire.

On April 9, 2018, after Attorney Taylor stirred up widespread media attention, he followed up with a six page "open letter" to an individual named Zachary Sire ("Sire"), a writer for ST8UPGAYPORN ("blog"). The open letter was addressed to "Zach and his faithful readers/followers" (**Ex. 3, Letter to Sire**). Notably, over the course of several years, Sire had waged an on-line campaign of harassment and threats against Mile High and Jensen – a fact which Attorney Taylor was likely aware.

Attorney Taylor's decision to direct an open letter to Sire evidences his obvious and nefarious purposes, i.e. to further escalate and incite such attacks against the Defendants. In his letter, Attorney Taylor not only re-initiated negative publicity against Mile High and Jensen and incited an assault against Mile High and Jensen's character, he also <u>affirmatively</u> threatened and intimidated potential witnesses and parties to assist and provide favorable statements, in Court or otherwise, for the Plaintiff to use against Mile High and Jensen.

---

[2] As an example of the multitude of articles and reports, as well as the commentary from the general public, a copy of the Boston Globe article dated March 28, 2018 entitled "<u>What if your house was used in a porn shoot? This homeowner says hers was, and she's suing</u>" is attached at Exhibit 6. Comments posted online by the public begin on page 5.

Notably, in his open letter to Sire, Attorney Taylor again accused Jensen ("Nica") of devising "predatory/pedophile-themed plots" in her work without providing any justification or basis for these false statements. (**Ex. 3, at 5**). Attorney Taylor further threatened that other actors who appeared in the movies filmed at the premises, as well as some actors who did not appear in the films, would be added as co-Defendants to this lawsuit unless they reached out to him and agreed to assist him and his client. He stated that while the Plaintiff did not at that time want to:

> "sue the estimated 30+ 'actors/models' who were present on her residential premises for the commercial pornography purposes. . . <u>Anyone</u> who initiates contact with me by email within the next 30 days will be assured of 'a pass' from being named as a Co-Defendant, provided that he/she agrees to being a cooperative witness and provides a voluntary and truthful written statement as to the circumstances of his/her presence on the Vineyard and/or on [the Plaintiff's] premises at Nica Noelle/Mile High's behest."

(**Ex. 3, at 3-4**) (emphasis in original).

### D. Attorney Taylor's Response to Mile High's Counsel's Request for a Rule 7.1 Conference

On April 25, 2018, after learning the about the statements in Attorney Taylor's open letter to Sire's blog readers, counsel for Mile High and Jensen sent an email to Attorney Taylor requesting a Rule 7.1 conference for the purpose of discussing the within motion. The undersigned counsel suggested the parties agree to a joint Order which would enjoin <u>all</u> parties, including their respective counsel, from any further disparaging or derogatory comments about each other to the media in all forms, i.e. electronic, print, online, or any comments which would threaten or otherwise intimidate any potential witnesses in this case with being added as a party to the lawsuit. (**Ex. 4**).

Attorney Taylor responded to Mile High's Rule 7.1 proposal in a letter dated May 2, 2018. (**Ex. 5**). Within the eight-paged response, Attorney Taylor admitted: 1) he was

previously aware of the hostile statements posted on Sire's blog against Mile High/Jensen; 2) making threatening statements to potential witnesses in his open letter to Sire with the purpose of obtaining their cooperation in his client's claims against Mile High/Jensen; and 3) to Plaintiff's knowledge and consent to his conduct in having "prevailed on Leah (Plaintiff) in permitting me to go that route as her attorney." (**Ex. 5, pg. 7**). Attorney Taylor's letter closed with a statement that he intended to contact the Attorney General's office in New Hampshire to bring criminal charges against Mile High and Jensen. (**Ex. 5, pg. 8**)

Mile High and Jensen, unable to deter Attorney Taylor's conduct, now seek to enjoin his defamatory, prejudicial, and inflammatory statements and threats to potential witnesses in the course of this pending litigation.

## STANDARD OF REVIEW

"Crafting a preliminary injunction is an exercise of discretion and judgment." Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080, 2087 (U.S. 2017). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); see also DeNovellis v. Shalala, 135 F.3d 58, 62 (1st Cir. 1998); Gately v. Massachusetts, 2 F.3d 1221, 1224 (1st Cir. 1993). "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 620 (1st Cir. 1995).

## ARGUMENT

### A. DEFENDANTS HAVE A REASONABLE LIKELIHOOD OF SUCCESS IN SHOWING THAT ATTORNEY TAYLOR MADE DEFAMATORY, PREJUDICIAL AND THREATENING REMARKS.

In seeking to enjoin Attorney Taylor from making further disparaging, prejudicial and threatening remarks, Mile High and Jensen must demonstrate a reasonable likelihood of success in establishing that Attorney Taylor's comments are not protected by the First Amendment but are damaging, and will be further damaging, requiring judicial intervention for the following reasons: (1) Attorney Taylor has made defamatory and prejudicial remarks against Mile High and Jensen; and (2) Attorney Taylor has made threatening or intimidating statements to witnesses and potential parties to this suit.[3]

### 1. Defamatory And Prejudicial Statements Against Mile High and Jensen.

The First Amendment prohibits the government, including the courts, from "abridging the freedom of speech." U.S. CONST. amend 1. However, the Supreme Court has long held that defamation is not a protected category of speech. See New York Times Co. v. Sullivan, 376 U.S. 254, 268, 85 (1964); see also Riley v. Harr, 292 F.3d 282, 291 (1st Cir. 2002). Under Massachusetts law, an action for defamation exists where: "(1) a [speaker] made a false statement of and concerning the [target of the speech]; (2) the statement could damage the [target's] reputation in the community; (3) the [speaker] was at fault in making the statement; and (4) the statement caused economic harm or is actionable without proof of economic loss." Albright v. Morton, 321 F. Supp. 2d 130, 134 (D. Mass. 2004) (citing Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003)). Defamation is present if the remark "tends so to

---

[3] Notably, the Defendants have not yet raised any defenses or counterclaims in this litigation because since filing the Complaint in this action on March 26, 20178, Attorney Taylor has not yet served any of the Defendants, or provided Defendants' counsel with the waiver of service of summons which the undersigned counsel have agreed to accept on the Defendants' behalf.

harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Gray v. St. Martin's Press, Inc., 221 F.3d 243, 250 (1st Cir. 2000) (quoting Restatement (Second) of Torts, § 559 (1977)).

Generally, there are four types of libelous remarks which are actionable per se: (1) imputations of crimes; (2) imputations affecting another's business, trade, profession, and/or office; (3) imputations of sexual misconduct, regardless of the legality of such conduct; and (4) accusations of untruthfulness or dishonesty. See Restatement (Second) of Torts, § 569 (1977), cmts. d, e, f, and g. In this instance, Attorney Taylor's statements violate both the second and third types of libelous remarks. Pedophilia/pedophilic-related themes are criminal as well reprehensible and accordingly defamatory and libelous per se.

To date, Attorney Taylor, individually and on behalf of his client Leah Bassett, has made multiple untrue and prejudicial comments to the public including, but not limited to the following: (1) baseless and unprovoked public accusations that their films include predatory and/or pedophilic themes; (2) an insinuation that there exists a parallel between Mile High and the sexual abuses in the Catholic Church; (3) analogized Mile High and Jensen's actions to the attempted sexual molestation and murder of 10 year old Jeffrey Curley as well as to pedophiles; and (4) threats to people who have had no, or very limited involvement in this matter. Public unfounded and outrageous accusations against any person or entity alleging predatory and/or pedophiliac conduct is scandalous, scurrilous, deleterious, and per se defamatory. Such statements were undoubtedly meant to damage the reputations of Mile High and Jensen in their respective community and prejudice their defense.

At this early stage in the litigation, with the Complaint not having been formally served to the Defendants, and yet given the extent of Attorney Taylor's continued outrageous and

harmful remarks directed at Mile High and Jensen, it is very likely that more false statements will be made by both the Plaintiff and Attorney Taylor in the upcoming months of litigation. The damage to Mile High and Jensen's reputations in their community/industry have already been significant and will be catastrophic should it be permitted to continue. Attorney Taylor and the Plaintiff are intent on litigating this case in the press and through internet blogs.

### 2. Attorney Taylor's Statements Include Unfounded Threats and Intimidation Directed to Witnesses and Potential Parties to this Suit.

As noted above, the First Amendment prohibits the government from "abridging the freedom of speech". However, "[w]hile most speech is protected from government regulation by the First Amendment . . . and art. 16 of the Massachusetts Declaration of Rights," certain classes of speech "are not protected because they are . . . of such slight social value as a step to truth that whatever meager benefit that may be derived from them is clearly outweighed by the dangers they pose." O'Brien v. Borowski, 961 N.E.2d 547, 554 (Mass. 2012) (citing Chaplinsky v. New Hampshire, 315 U.S. 568 571 (1942)), abrogated on other grounds by Seney v. Morhy, 3 N.E.3d 577 (Mass. 2014).

The Seventh Circuit has observed that "[t]he threat of a lawsuit for damages can have [an] intimidating effect on a witness." Giffin v. Summerlin, 78 F.3d 1227, 1231 (1995);[4] see also Lewis v. Brouillard, 2010 WL 3464308, *3 (E.D. Mich. Aug. 30, 2010) (same); McCann v. Hood, 2009 WL 276792, *10 (S.D. Ind. Feb. 3, 2009) (same). No doubt, a potential lawsuit exposes a witness or potential party to a very tangible threat of economic loss. In Commonwealth v. Simeone, 2014 WL 5347627, 18 N.E.3d 1136 (Mass. App. Ct. Oct. 22, 2014), the Massachusetts Appeals Court, relying on O'Brien, supra, held that threatening to sue a

---

[4] In the Giffin case, the court observed the general principle that the mere threat of a lawsuit can intimidate a witness to do or not do something which the Court used as support for witness immunity in the context of depositions and trial testimony.

witness "with the specific intent to impede or obstruct the witness from participating in [a] criminal proceeding" constituted witness intimidation "outside of the realm of protected speech." Id.

At least one First Circuit court has opined that threatening to sue a witness in exchange for something of value amounts to extortion. See United States v. Curley, 2015 WL 1539619 (D. Me. Apr. 6, 2015). See also, M.G.L. ch. 268 § 13B (statute imposing criminal sanctions on direct and willful intimidation and/or harassment of witnesses in any court proceeding). When such threats are made with the intent or eliciting some action from the witness, such as to deter him or her from participating in a proceeding, there is no protection for that kind of "speech." Simeone 2014 WL 5347627 at *2. See M.G.L. ch 268 § 13B. Here Attorney Taylor has threatened to sue non-parties and bring them into the Plaintiff's claims in this lawsuit, thus soliciting their cooperation in exchange for a "pass from being named a Co-Defendant" (**Ex. 3, at 3-4**) in a manner that is not protected by any state or federal protection of free speech.

### B. MILE HIGH AND JENSEN FACE SUBSTANTIAL HARDSHIP AND IRREPARABLE HARM DUE TO ATTORNEY TAYLOR'S REMARKS.

"[I]rreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). To establish irreparable harm "a plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996). "It is usually enough if the plaintiff shows that its legal remedies are inadequate." Charlesbank, 370 F.3d at 162; Ross-Simons, 102 F.3d at 18. This will be found where there is "a substantial injury that is not accurately measurable or adequately compensable by money damages." Ross-Simons, 102 F.3d at 19.

Here, even if Mile High and Jensen are ultimately successful in defending against Plaintiff's claims at trial, they have no adequate remedy at law for the damages Attorney Taylor has already caused and will continue to cause to their reputations. Accordingly, prevailing in this case will not make Mile High or Jensen whole. Cf. Charlesbank, 370 F.3d at 162 (no irreparable harm where "an award will make [the moving party] whole"); Ross-Simons, 102 F.3d at 18 (irreparable harm exists where "legal remedies are inadequate"). Prior to filing to the Complaint, Attorney Taylor affirmatively reached out to the media and targeted individuals for the purpose to defame Mile High and Jensen and prejudice their impending defenses. The six-page open letter to Sire (directly addressing Mile High and Jensen's community) and the alleged deplorable falsehoods have and will continue to harm their business prospects and reputations. This damage cannot be undone or restored at the conclusion of this action.

### C. THE BALANCE OF EQUITIES WEIGHS IN FAVOR OF MILE HIGH AND JENSEN, AND ATTORNEY TAYLOR FACES NO HARDSHIP IN KEEPING HIS REMARKS WITHIN THE SCOPE PERMITTED WITHIN THE RULES OF PROFESSIONAL CONDUCT.

A party moving for a preliminary injunction must show, inter alia, "that the balance of equities tips in [its] favor." Winter, 555 U.S. at 20. This involves a "balance of relevant hardships as between the parties." Braintree Lab., 622 F.3d at 40.

Under the Massachusetts Rules of Professional Conduct, an attorney "shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Mass. R. Prof. C. 3.6(a).[5] Moreover, both defamation and threatening speech directed at witnesses are categories of speech with little or no social value

---

[5] Although the Rule affords the highest protection for a criminal defendant's rights to due process and a fair trial, cf. Rule 3.6, cmt. 6, the Rule is not limited to criminal proceedings. Even in civil proceedings, a licensed attorney is required to restrain extrajudicial comments that can prejudice a party's rights. Id.

which are outweighed by the dangers they pose, and for that reason are not worthy of First Amendment protection. See New York Times Co., 276 U.S. at 268, 85 (defamatory speech not protected); O'Brien, 961 N.E.2d at 554 (social value versus danger posed); Simeone, 18 N.E.3d at 1136 (witness intimidation outside the realm of protected speech).

Attorneys licensed to practice law have an ethical obligation to adhere to standards of professionalism established by the Rules of Professional Conduct. As quoted above, the Rules limit the scope of a lawyer's extrajudicial statements. Attorney Taylor has moved well beyond the boundaries of permissible conduct under Rule 3.6(a). The Rules do not give lawyers latitude to publicly threaten potential parties/witnesses or refer to opposing parties as "predatory" or "pedophilic" and analogizing the Defendants' conduct to the murders of a minor or abuses in the Catholic Church. Attorney Taylor's statement to the Vineyard Times that his client felt "the perceived need to 'go public' with her legal grievances" underscores his intent to sway public opinion and prejudice the community against Mile High and Jensen. (See online public responses to Boston Globe article at **Ex. 6**).

Even if the Court is disinclined to bar Attorney Taylor from making disparaging or prejudicial statements on the basis of Rule 3.6(a) alone, his disparaging remarks towards the Defendants and his threats and intimidation to potential witnesses are not protected by any right to free speech, state or federal. Cf. New York Times Co., 276 U.S. at 268, 85; Giffin, 78 F.3d at 1231; O'Brien, 961 N.E.2d at 554; Simeone, 18 N.E.3d at 1136. Relative to the balance of hardships, the scales clearly weigh in favor of Mile High and Jensen in that Attorney Taylor would not experience any hardship in complying with the Rules of Professional Conduct.

## CONCLUSION

WHEREFORE, the Defendants, Monica Jensen, Jon Blitt, Mile High Media, and Mile High Distribution respectfully request that this Honorable Court:

A) Order John A. Taylor, Esq., Counsel for the Plaintiff, to refrain from making disparaging, misleading and/or prejudicial remarks to the media, the mainstream press, or any online bloggers about any of the Defendants;

B) Order John A. Taylor, Esq., Counsel for the Plaintiff, to further refrain from coercing, threatening, or intimidating, directly or indirectly, potential witnesses or parties to this case; and

C) Afford any such other relief as this Court may deem appropriate.

Respectfully submitted,
MONICA JENSEN, JON BLITT,
MILE HIGH MEDIA and MILE HIGH
DISTRIBUTION INC.,
By their Attorneys,

Dated: May 17, 2018

/s/  Stephen A. Roach
/s/  Natalie R. Megaloudis
Stephen A. Roach, Esq. BBO 542138
Natalie R. Megaloudis, Esq. BBO 648408
ROACH, IOANNIDIS & MEGALOUDIS, LLC
50 Congress Street, Suite 400
Boston, MA 02109
roach@rimlawyers.com
nrmegaloudis@rimlawyers.com
Phone: (617) 723-2800
Fax: (617) 723-4313

## LOCAL RULE 7.1 (a) (2) CERTIFICATION

I, Natalie R. Megaloudis, Attorney for the attorney for the Defendants Monica Jensen, Jon Blitt, Mile High Media and Mile High Distribution, Inc., certify that I have conferred with counsel for the Plaintiff by e-mail exchanges, in a good faith attempt to resolve or narrow this issues related to the within Motion.

/s/Natalie R. Megaloudis
Natalie R. Megaloudis

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1 (d), the Defendants Monica Jensen, Jon Blitt, Mile High Media, and Mile High Distribution, Inc., hereby respectfully suggest that oral argument may assist the Court and wish to be heard on the within Motion.

## CERTIFICATE OF SERVICE

I, Natalie R. Megaloudis, Esq., attorney for the Defendants Monica Jensen, Jon Blitt, Mile High Media and Mile High Distribution, Inc., hereby certify that a true copy of this document and was filed through the ECF system, and will be sent this date, May 17, 2018, electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: May 17, 2018

/s/ Natalie R. Megaloudis
Natalie R. Megaloudis